# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――

NORWICH PHARMACEUTICALS, INC.,
Plaintiff-Appellant,

v.

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS
SECRETARY OF HEALTH AND HUMAN SERVICES; et al.,
Defendants-Appellees,

SALIX PHARMACEUTICALS, INC.,
Intervenor-Defendant-Appellee.

―――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――

## BRIEF FOR DEFENDANTS-APPELLEES
―――――――――

*Of Counsel:*

ROBERT FOX FOSTER
*Acting General Counsel,*
*Chief Counsel for Foods,*
*Research, and Drugs*
*U.S. Department of Health and*
*Human Services*

**\*Additional counsel in signature**
**block**

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL TENNY
J. KAIN DAY
*Attorneys, Appellate Staff*
*Civil Division, Room 7234*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4214*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.     Parties and Amici

The plaintiff-appellant is Norwich Pharmaceuticals, Inc.

The defendants-appellees are Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services; Martin A. Makary, M.D., in his official capacity as Commissioner of Food and Drugs; and the United States Food and Drug Administration.

Salix Pharmaceuticals, Inc., is an intervenor for defendants-appellees.

No amici are currently before this Court.

## B.     Rulings Under Review

Appellant seeks review of the district court's memorandum opinion and order (Dkt. Nos. 65-67) denying appellant's motion for a preliminary injunction and granting summary judgment to the federal defendants and intervenor, both of which the district court (Moss, J.) entered on November 1, 2023.  JA__-__ [Dkts. 65-67]; *see also Norwich Pharms., Inc. v. Becerra*, 703 F. Supp. 3d 1 (D.D.C. 2023).

**C.    Related Cases**

This case has not previously been before this Court.

There is one related case that is pending before this Court but has not been fully briefed: *Norwich Pharmaceuticals, Inc. v. Kennedy*, No. 25-5137. The Court denied Norwich's motion to consolidate these cases but directed the Clerk to schedule the cases for argument on the same day. The related case arose from proceedings in *Norwich Pharms., Inc. v. Kennedy*, No. 1:25-cv-91 (D.D.C.).

There are also related patent proceedings in the District of Delaware, the District of New Jersey, the Federal Circuit, and the Supreme Court. Most of those proceedings have concluded. *See Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-430 (D. Del.); *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Nos. 22-2153, 23-1952 (Fed. Cir.); *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Nos. 24-292, 24-294 (S. Ct.). One remains ongoing. *See Salix Pharms., Inc. v. Norwich Pharms., Inc.*, No. 1:24-cv-7140 (D.N.J.).

*/s/ J. Kain Day*
J. Kain Day

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................1

STATEMENT OF JURISDICTION.............................................3

STATEMENT OF THE ISSUE...................................................3

PERTINENT STATUTES ...........................................................3

STATEMENT OF THE CASE ....................................................4

    A.    Statutory and Regulatory Background ....................4

        1.    Drug Applications Before FDA.......................4

        2.    ANDA Patent Litigation.................................9

    B.    Factual and Procedural Background ......................11

        1.    Salix Secures Approval to Market Rifaximin.............11

        2.    Norwich submits ANDA No. 214369, and Salix Sues for Patent Infringement.......................12

        3.    FDA Tentatively Approves ANDA No. 214369, and Norwich Sues for Final Approval................16

SUMMARY OF ARGUMENT ...................................................18

STANDARD OF REVIEW.........................................................21

ARGUMENT ..............................................................................22

I.    FDA Correctly Interpreted the Court's Orders in the Patent Case.........................................................................22

    A.    FDA Applied the District Court Orders According to Their Text.............................................................22

    B.     Context Confirms FDA's Interpretation ...............................25

II.   Norwich Cannot Overcome the Plain Text of the Delaware Court Orders ......................................................................................30

    A.     Norwich Misunderstands the Record in the Patent Case ...................................................................................................30

    B.     Norwich's Statutory and Regulatory Arguments Are Flawed .................................................................................37

    C.     The Purpose and History of the Statute Provide Norwich No Support..............................................................43

CONCLUSION .........................................................................................45

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Atlantic City Elec. Co. v. FERC,*
   295 F.3d 1 (D.C. Cir. 2002) .................................................................. 41

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................... 39

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S,*
   566 U.S. 399 (2012) ............................................................................ 5, 7

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ............................................................................... 38

*Ferring B.V. v. Watson Lab'ys, Inc.-Fla.,*
   764 F.3d 1382 (Fed. Cir. 2014) ........................................................... 10

*Ford Motor Co. v. Summit Motor Prods., Inc.,*
   930 F.2d 277 (3d Cir. 1991) .................................................................. 23

*Hill Dermaceuticals, Inc. v. FDA,*
   709 F.3d 44, 47 (D.C. Cir. 2013) ........................................................ 36

*Ipsen Biopharmaceuticals, Inc. v. Becerra,*
   108 F.4th 836 (D.C. Cir. 2024) ...................................................... 21, 28

*Negrón–Almeda v. Santiago,*
   528 F.3d 15 (1st Cir. 2008) ................................................................... 23

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.,*
   520 F.3d 1358 (Fed. Cir. 2008) ..................................................... 40, 41

*Salix Pharms., Ltd. v. Norwich Pharms. Inc.,*
   98 F.4th 1056 (Fed. Cir. 2024) ........................................ 16, 28, 32, 39

*Smalls v. United States,*
   471 F.3d 186 (D.C. Cir. 2006) ............................................................. 38

*St. Louis., Kan. City & Colo. R.R. Co. v. Wabash R.R. Co.,*
   217 U.S. 247 (1910) ............................................................................... 22

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ........................................................ 18, 22, 23, 30

*United States v. Spallone*,
   399 F.3d 415 (2d Cir. 2005) .................................................. 22

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
   887 F.3d 1117 (Fed. Cir. 2018) ............................................. 40

## Statutes:

Drug Price Competition and Patent Term Restoration Act of 1984,
   Pub L. No. 98-417, 98 Stat. 1585 .......................................... 5

Federal Food, Drug, and Cosmetic Act:
   21 U.S.C. ch. 9 ...................................................................... 4
   21 U.S.C. § 355(a) ................................................................ 4
   21 U.S.C. § 355(b) ................................................................ 4
   21 U.S.C. § 355(b)(1) ........................................................... 5
   21 U.S.C. § 355(b)(1)(A)(viii) ............................................. 4
   21 U.S.C. § 355(j) ................................................................ 5
   21 U.S.C. § 355(j)(2) ........................................................... 5
   21 U.S.C. § 355(j)(2)(A)(vii) ............................................... 5
   21 U.S.C. § 355(j)(2)(A)(vii)(I)-(II) .................................... 5
   21 U.S.C. § 355(j)(2)(A)(vii)(III) ....................................... 6
   21 U.S.C. § 355(j)(2)(A)(vii)(IV) ....................................... 6
   21 U.S.C. § 355(j)(2)(A)(viii) .......................................... 6, 7
   21 U.S.C. § 355(j)(2)(B) ...................................................... 6
   21 U.S.C. § 355(j)(2)(D) .................................................. 8, 31
   21 U.S.C. § 355(j)(5) .......................................................... 42
   21 U.S.C. § 355(j)(5)(A)-(B) .......................................... 35, 36
   21 U.S.C. § 355(j)(5)(B) ................................................. 7, 35
   21 U.S.C. § 355(j)(5)(B)(iii) ........................................... 8, 10
   21 U.S.C. § 355(j)(5)(B)(iii)(II)(bb) ................................... 40
   21 U.S.C. § 355(j)(5)(B)(iv) ............................................... 10

5 U.S.C. § 706(2)(A) .............................................................. 21

28 U.S.C. § 1291 ..................................................................... 3

28 U.S.C. § 1331.................................................................3

35 U.S.C. §§ 101-03............................................................6

35 U.S.C. § 112...................................................................6

35 U.S.C. pt. III................................................................10

35 U.S.C. § 271...................................................................6

35 U.S.C. § 271(e)(2).........................................................8, 9

35 U.S.C. § 271(e)(4)........................1, 8, 9, 10, 32, 37, 39

35 U.S.C. § 271(e)(4)(A)...........................................10, 39, 40

35 U.S.C. § 271(e)(4)(B)-(D)...........................................10

**Regulations:**

21 C.F.R. pt. 314................................................................4

21 C.F.R. § 314.96..............................................................8

21 C.F.R. § 314.96(a)..........................................................8

21 C.F.R. § 314.96(a)(1)....................................................31

21 C.F.R. § 314.94(a)(12)(viii)...........................................9

21 C.F.R. § 314.94(a)(12)(viii)(A)...................................9, 41

**Rules:**

Fed. R. App. P. 4(a)(1)(B)...................................................3

Fed. R. Civ. P. 60(b).........................................................14

Fed. R. Civ. P. 60(b)(5)....................................................14

**Other Authority:**

Joint Letter to the Honorable Richard G. Andrews Regarding Proposed Form of Judgment, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-430 (D. Del. Aug. 15, 2022), Dkt. No. 196 ...............................25

## GLOSSARY

| | |
|---|---|
| ANDA | Abbreviated New Drug Application |
| APA | Administrative Procedure Act |
| FDA | Food and Drug Administration |
| HE | Hepatic Encephalopathy |
| IBS-D | Irritable Bowel Syndrome with Diarrhea |
| Norwich | Norwich Pharmaceuticals, Inc. |
| Salix | Salix Pharmaceuticals, Inc. |

## INTRODUCTION

The Food and Drug Administration (FDA) is tasked with reviewing drug manufacturers' requests to bring a new drug to market. Sometimes, those requests take the form of an Abbreviated New Drug Application, or "ANDA" for short. The ANDA process provides generic manufacturers with a shortened path to approval, allowing them to rely on FDA's prior findings of safety and effectiveness for an already-approved drug. Also, the ANDA process protects the patent rights of brand manufacturers, *i.e.*, those manufacturers that develop and market new drugs. When a brand manufacturer claims patent protection, submitting an ANDA can be treated as an act of patent infringement, and ANDA filings often launch patent litigation. Such litigation can automatically stay approval of the ANDA, and if the litigation results in a final judgment of infringement, a district court must enter a so-called "resetting order." *See* 35 U.S.C. § 271(e)(4). A resetting order delays FDA approval of the infringing ANDA until the last infringed patent expires.

In 2019, Norwich Pharmaceuticals, Inc., (Norwich) submitted ANDA No. 214369, seeking approval to market a drug called rifaximin. The brand manufacturer of that drug, Salix Pharmaceuticals, Inc.

(Salix), then sued Norwich for patent infringement in the U.S. District Court for the District of Delaware. Salix asserted a number of claims from several patents—some covering rifaximin itself and others covering the use of rifaximin for certain conditions. Ultimately, the court presiding over the patent case entered judgment in Salix's favor on a subset of its claims—just the claims related to one of the conditions. That court then entered an order delaying "final approval" of "ANDA No. 214369" until the relevant patents expire. Later, when Norwich sought relief from that judgment under Rule 60, the court explained that its judgment prevented FDA approval despite Norwich's amended ANDA. Norwich had "made various strategic choices" during the patent litigation, and it had to "live with the consequences of those choices," namely delayed approval for its ANDA even as amended. JA__ [AR360].

Norwich now claims that it can obtain final approval of ANDA No. 214369, relying only on the fact that it amended ANDA No. 214369 to avoid infringement. FDA properly rejected that effort, which is squarely precluded by Delaware district court's final judgment and Rule 60 order. Those orders are unambiguous, and FDA cannot look to the broader record to find an ambiguity where none exists. Tellingly, during the

underlying patent proceedings, no one—Norwich included—understood the orders as allowing Norwich to amend its ANDA and secure immediate approval. The district court properly upheld FDA's decision, and this Court should affirm.

## STATEMENT OF JURISDICTION

Norwich invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 1331. JA__-__ [Dkt. 1]. On November 1, 2023, the district court entered a final judgment in FDA's favor. JA__ [Dkt. 66]. Norwich filed a timely notice of appeal on December 29, 2023. JA__ [Dkt. 68 at 1]; *see* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether FDA correctly granted Norwich only tentative approval for ANDA No. 214369 based on federal court orders that prevented "final approval" for "ANDA No. 214369" until certain patents expire.

## PERTINENT STATUTES

The pertinent statutes are reproduced in an Addendum to this Brief.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

FDA regulates the manufacture, sale, and labeling of prescription drugs under a detailed statutory and regulatory scheme. *See* Federal Food, Drug, and Cosmetic Act, 21 U.S.C. ch. 9. Generally, no one may release a new drug on the market without first receiving FDA approval. *See* 21 U.S.C. § 355(a); 21 C.F.R. pt. 314. To receive such approval, a drug manufacturer must submit an application to FDA, and there are two basic types of application. 21 U.S.C. § 355(b), (j).

### 1.    Drug Applications Before FDA

Brand manufacturers, *i.e.*, companies that research and develop novel drugs, file New Drug Applications. A New Drug Application requires a host of information, including a list of the drug's components, scientific data about the drug's safety and effectiveness, and proposed labeling for the drug. 21 U.S.C. § 355(b). Most importantly for present purposes, New Drug Applications can identify any patent that the brand manufacturer contends covers the new drug or a method for using that drug. *See id.* § 355(b)(1)(A)(viii). FDA lists all the patents identified in approved New Drug Applications in a central repository, colloquially

known as the "Orange Book." *See, e.g., Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 405-06 (2012); 21 U.S.C. § 355(b)(1).

Other manufacturers, called generic manufacturers, submit what is known as an Abbreviated New Drug Application or "ANDA," relying on FDA's prior findings of safety and effectiveness for the brand-name drug. 21 U.S.C. § 355(j). This process, established under the Hatch-Waxman Amendments, is "designed to speed the introduction of low-cost generic drugs to market." *Caraco*, 566 U.S. at 405; *see also* Drug Price Competition and Patent Term Restoration Act of 1984, Pub L. No. 98-417, 98 Stat. 1585. It allows generic manufacturers to avoid the often-costly requirements to prove a drug's safety and efficacy, typically by allowing the generic to rely on FDA's findings for the brand name drug. *See* 21 U.S.C. § 355(j)(2).

As part of its ANDA, a generic manufacturer must address any patents listed in the Orange Book for the relevant brand-name drug. 21 U.S.C. § 355(j)(2)(A)(vii). If the Orange Book does not list any relevant patents, or if it lists only expired patents, the generic manufacturer can provide a certification to that effect. *Id.* § 355(j)(2)(A)(vii)(I)-(II). When the Orange Book does list at least one unexpired patent, the generic

5

manufacturer might certify that it will delay seeking approval of its ANDA until all listed patents expire. *See id.* § 355(j)(2)(A)(vii)(III). But if a generic manufacturer seeks immediate approval of its ANDA, despite the Orange Book listing at least one unexpired patent, it has two options.

It can submit one or more "paragraph IV certifications"—named after the relevant statutory subsection. 21 U.S.C. § 355(j)(2)(A)(vii)(IV). To take this path, the generic manufacturer must certify that a listed patent "is invalid or will not be infringed." *Id.* A patent is invalid if it does not meet the relevant statutory criteria, for example because the claimed invention would have been obvious. *See, e.g.*, 35 U.S.C. §§ 101-103, 112. And a patent is not infringed if the relevant drug, or its proposed use, does not practice each and every aspect of the claimed invention. *See id.* § 271. If an ANDA applicant chooses to include a paragraph IV certification, it must provide notice to the relevant patent owner and the relevant New Drug Application holder. 21 U.S.C. § 355(j)(2)(B).

The second option, a so-called "section viii statement," is available only for patent claims that cover a method of using the drug (known as "method of use claims"), as opposed to claims that cover only the drug

itself.  *See* 21 U.S.C. § 355(j)(2)(A)(viii); *Caraco*, 566 U.S. at 405.  It is not uncommon for a drug to have multiple uses only some of which are covered by method of use claims.  *See Caraco*, 566 U.S. at 405.  In that circumstance, an ANDA applicant may seek approval only for the non-patented uses by including a section viii statement in its application and omitting the patented uses from its labeling.  21 U.S.C. § 355(j)(2)(A)(viii).  Often, this is referred to as a "section viii carveout," alluding to the fact that the applicant intends to carve out the patented use from the labeling for its generic drug.

A generic manufacturer is free to employ either of these two options, or it might employ both at the same time.  Imagine, for example, that the Orange Book lists two patents for a drug—Patent A and B.  Patent A covers one indication, and Patent B covers another.  A generic manufacturer might choose to include paragraph IV certifications for both patents, but it does not have to do so.  It could carve out one of the patented indications, file a paragraph IV certification for the other, and still seek approval before the patents expire.

As this suggests, patent certifications can affect when an ANDA may be approved.  21 U.S.C. § 355(j)(5)(B).  When an ANDA applicant

7

has "made a certification" under paragraph IV, the effective date of any approval hinges on the patent litigation that usually follows. *See id.* § 355(j)(5)(B)(iii). In particular, the filing of an ANDA with a paragraph IV certification is treated as an act of patent infringement, allowing the brand manufacturer to sue immediately rather than waiting for the drug to be marketed (which may give rise to more traditional patent infringement). *See* 35 U.S.C. § 271(e)(2). If such an infringement suit is filed within a specified statutory period, approval of the ANDA is automatically delayed for 30 months unless the generic manufacturer obtains a favorable judgment, or certain other litigation events occur, within that time. 21 U.S.C. § 355(j)(5)(B)(iii). The court hearing the patent litigation may order a longer or shorter stay period in certain circumstances, and at the end of the case, if it finds the patent valid and infringed, the court may issue an order delaying approval of the application until the relevant patent expires. *Id.*; 35 U.S.C. § 271(e)(4).

The contents of an ANDA are not set in stone. FDA allows a generic manufacturer to amend its ANDA before that ANDA has been approved. 21 C.F.R. § 314.96; *see* 21 U.S.C. § 355(j)(2)(D) (contemplating amendments). Amendments may "revise existing information or provide

additional information," 21 C.F.R. § 314.96(a), but they do not generally result in a new ANDA.

A specific regulatory provision governs amended certifications—that is, amended statements in response to Orange Book patents. 21 C.F.R. § 314.94(a)(12)(viii). Certifications may be amended at any time before approval, and they must be amended in certain circumstances. *See id.* § 314.94(a)(12)(viii)(A). A paragraph IV certification, for example, must be amended after a final judgment of infringement. *Id.* The generic manufacturer must certify the infringed patent's expiration date, or if that patent is a method of use patent, it may agree to carve out the patented use. *Id.* In either case, the "ANDA will no longer be considered to contain a paragraph IV certification" moving forward. *Id.*

## 2. ANDA Patent Litigation

The ANDA process incentivizes and provides mechanisms for manufacturers to resolve patent disputes expeditiously. As noted above, submitting an ANDA with one or more paragraph IV certifications is itself treated as an act of patent infringement. 35 U.S.C. § 271(e)(2). And the statutory scheme encourages both brand and generic manufacturers to engage in litigation without delay. Speed can all but guarantee the

brand manufacturer 30 months of exclusive sales. 21 U.S.C. § 355(j)(5)(B)(iii) (delaying ANDA approval when a brand sues shortly after a paragraph IV certification). Likewise, generics willing to lead the challenge against Orange Book patents might be rewarded with a period of exclusivity for their trouble—at least so long as they can "lawfully maintain[]" a paragraph IV certification. *Id.* § 355(j)(5)(B)(iv) (180-day exclusivity period).[1]

ANDA litigation also comes with special patent remedies. *Compare* 35 U.S.C. § 271(e)(4) (ANDA), *with* 35 U.S.C. pt. III (establishing remedies for non-ANDA patent litigation). Once a judgment in favor of the patent owner is entered, the district court generally will delay the effective date of the offending ANDA. 35 U.S.C. § 271(e)(4)(A); *see Ferring B.V. v. Watson Lab'ys, Inc.-Fla.*, 764 F.3d 1382, 1391 (Fed. Cir. 2014). That ANDA cannot be approved "earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A). Otherwise, the court may award damages or enter an

---

[1] A related appeal, No. 25-5137, deals with this exclusivity period. Norwich challenges an FDA decision, which concluded that a third party has not forfeited its eligibility for the 180-day exclusivity period for 550-mg rifaximin.

injunction, depending on the relevant circumstances. *Id.* § 271(e)(4)(B)-(D).

## B. Factual and Procedural Background

This appeal centers on ANDA No. 214369, which Norwich submitted in December 2019, and the patent litigation that followed. Before getting there, some background information is necessary.

### 1. Salix Secures Approval to Market Rifaximin

Intervenor-Defendant Salix Pharmaceuticals, Inc., developed and patented[2] a drug called rifaximin. *See* JA__-__ [AR209-214]. Rifaximin is a locally acting antibiotic, and at a specific strength (550 mg), it has been approved for two conditions—hepatic encephalopathy (HE) and irritable bowel syndrome with diarrhea (IBS-D). JA__, __ [AR15, 206]. HE is a brain condition, caused by the liver's inability to remove toxins, and IBS-D is a gastrointestinal disorder, characterized by abdominal pain and frequent, loose stools. Salix markets rifaximin under the brand-name Xifaxan—selling the drug for both the HE and the IBS-D

---

[2] The relevant patent rights are held by a combination of Salix, Salix Pharmaceuticals, Ltd., Bausch Health Ireland Ltd., and Alphasigma S.P.A. JA__-__ [AR209-214]. Only Salix intervened in this case, and the distinction among the rights holders is not relevant for present purposes.

indications.  Relevant here, Salix was granted patents that claim forms of rifaximin, the use of rifaximin for HE, and the use of rifaximin for IBS-D.  *See* JA__-__ [AR209-214].

### 2. Norwich submits ANDA No. 214369, and Salix Sues for Patent Infringement

More than 15 years after Salix first received approval to market Xifaxan, Norwich submitted ANDA No. 214369.  JA__, __ [Dkt. 65 at 9; AR209].[3]  That ANDA contained several paragraph IV certifications—asserting that Salix's patents were either invalid, not infringed, or both.  *See* JA__-__ [AR57-58].  The certifications applied to each type of claim in Salix's patents—i.e., claims that cover either the drug itself, the HE indication, or the IBS-D indication.

Salix sued Norwich in the U.S. District Court for the District of Delaware, alleging patent infringement based on ANDA No. 214369.  After more than two years of litigation and a five-day trial, the court issued a split decision.  JA__-__ [AR41-42].  It found infringement only for the method of use claims covering the HE indication, concluding the drug and IBS-D claims were either invalid or not infringed.  JA__ [AR43].

---

[3] Norwich's regulatory agent, Alvogen PB Research and Development LLC, filed the ANDA on Norwich's behalf.

12

And it ultimately entered judgment to that effect. JA__-__ [AR41-42]. The court also ordered "that the effective date of any final approval by [FDA] of Norwich's ANDA No. 214369 [was] to be a date not earlier than the date of expiration of the last to expire of" the infringed patents—plus any period of "regulatory exclusivity." JA__ [AR42]. Thus, ANDA No. 214369 could be approved no earlier than October 2, 2029, upon the expiration of the last patent held to be infringed.

That final judgment resolved a dispute among the parties, which related to the effective date of approval for ANDA No. 214369 in light of the court's conclusions about the various patents. JA__ [AR43]. Norwich had argued for a narrow final judgment, asking that it be limited to "Norwich's ANDA with proposed labeling containing [the HE indication]." JA__ [AR43] (alteration in original) (quotation marks omitted). As was apparent to the court addressing the patent dispute, Norwich sought freedom to "carve out the HE indication" from ANDA No. 214369 and seek immediate approval unencumbered by the judgment. *See* JA__-__ [AR43-44]; *cf.* JA__ [Dkt. 65 at 10]. The court rejected that effort. JA__ [AR43]. Instead, it adopted Salix's proposal, which delayed

approval for "ANDA No. 214369" without Norwich's proposed limitation. JA__-__ [AR43] (quotation marks omitted).

A month later, on September 6, 2022, Norwich amended ANDA No. 214369. JA__-__ [AR54-58]. It carved out the HE indication, changing its prior paragraph IV certifications to section viii statements for the patent claims covering that indication. JA__-__ [AR57-58]. Said differently, Norwich now seeks FDA approval only for use of generic 550-mg rifaximin to treat IBS-D, as to which marketing was held not to infringe any valid patent.[4]

The next day, on September 7, 2022, Norwich filed a Rule 60 motion in the district court handling the patent litigation. JA__ [AR264]. It asked that court to "modify" the final judgment because that judgment was "blocking the approval of Norwich's ANDA until the expiration of the Asserted HE Patents." JA__ [AR269]. Norwich argued that its ANDA amendment had satisfied the judgment, such that any further delay of approval was no longer equitable. JA__ [AR274] (citing Fed. R. Civ. P.

---

[4] Norwich submitted a separate ANDA No. 214370 in December 2019, seeking approval to market 200-mg rifaximin to treat travelers' diarrhea. That ANDA was later amended to also seek approval to market 550-mg rifaximin to treat IBS-D. ANDA No. 214370 is the subject of the related appeal, No. 25-5137.

60(b)(5)). But it did not argue (as it does now) that the original judgment allowed FDA to approve ANDA No. 214369 as amended—*i.e.*, as limited to the IBS-D indication. Instead, Norwich explained that "FDA approval is a gate for marketing Norwich's ANDA Product for the IBS-D Indication, and the current Judgment blocks that approval until October 2029." JA__ [AR285].

The district court denied Norwich's Rule 60 motion. JA__-__ [AR358-362]. It concluded that Norwich had failed to show "a significant change in circumstances" because it should have expected the possibility of a split decision—resulting in an injunction prohibiting approval of an ANDA that included some non-infringing indications. JA__-__ [AR359-360]. The court explained that Norwich had made "various strategic choices along the way" and that Norwich had to "live with the consequences of those choices." JA__ [AR360].

Norwich noticed an appeal to the U.S. Court of Appeals for the Federal Circuit, challenging both the scope of the final judgment and the refusal to amend that judgment. The Federal Circuit affirmed, upholding the scope of the final judgment and holding that the court acted within

its broad discretion in denying relief under Rule 60.  *See Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir. 2024).

### 3. FDA Tentatively Approves ANDA No. 214369, and Norwich Sues for Final Approval

After Norwich appealed, but before the Federal Circuit rendered its decision, FDA granted tentative approval for ANDA No. 214369.  JA__-__ [AR365-374].  It explained that, based on the ruling in the patent case, any "final approval [could not] be granted until October 2, 2029."  JA__ [AR367]; *see also* JA__ [AR374].  FDA also interpreted the Rule 60 order as "refusing to modify the judgment" to allow for immediate approval. JA__ [AR374].

Three days later, Norwich filed the lawsuit currently on appeal.  In this case, Norwich sued FDA in the U.S. District Court for the District of Columbia, asserting an Administrative Procedure Act (APA) claim. JA__-__ [Dkt. 1 ¶¶ 95-103].  The same day, Norwich filed a motion for a preliminary injunction.  JA__-__ [Dkt. 4].  At bottom, Norwich sought an order directing FDA to approve ANDA No. 214369 immediately.  *E.g.*, JA__ [Dkt. 1 at 24].  Thereafter, Salix intervened in support of FDA, the

parties exchanged briefing, and the Court held a hearing on both the preliminary injunction request and the merits.  JA__ [Dkt. 65 at 2-3].[5]

The district court ultimately denied Norwich's request for a preliminary injunction and granted FDA's motion for summary judgment.  JA__-__ [Dkt. 65 at 2-3].  It concluded that Norwich had standing and a cause of action under the APA, but rejected Norwich's arguments on the merits.  *See* JA__-__ [Dkt. 65 at 19-39].  It found those arguments "exceedingly difficult to square with the text of the [Delaware district court's] final judgment and with th[at] court's Rule 60(b) decision."  JA__ [Dkt. 65 at 39].  It also noted that although Norwich had appealed the patent decision to the Federal Circuit (which had not yet ruled) "no party—not even Norwich—[had been] urging the Federal Circuit to adopt [Norwich's] unconventional reading."  JA__ [Dkt. 65 at 39].  Norwich appealed.

---

[5] Another company, Teva Pharmaceuticals USA, Inc., moved to intervene as well.  JA __ n.3 [Dkt. 65 at 16 n.3].  It claimed that any order requiring immediate approval of ANDA No. 214369 would interfere with Teva's exclusive right to market generic rifaximin.  Norwich clarified that it is no longer seeking immediate relief and that FDA would need to address Teva's exclusivity claim even if Norwich prevails.  On that basis, the district court denied intervention.  *Id.*

17

While this appeal has been pending, Norwich again sought final approval for ANDA No. 214369. That request was based on Norwich's appeal to the Federal Circuit, and once the Federal Circuit affirmed, FDA denied the request, granting Norwich only tentative approval for ANDA No. 214369. In reaching that decision, FDA explained that the Federal Circuit's opinion did not undermine its first tentative approval decision—the one on appeal here. Norwich has not challenged the new tentative approval decision.

## SUMMARY OF ARGUMENT

**I.** FDA correctly interpreted the final judgment in the patent case as preventing immediate approval of ANDA No. 214369, even as amended.

**A.** Agencies are bound to follow the "plain terms" of court orders that "unambiguously apply" to their decision making. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009). As relevant here, a district court in Delaware entered a final judgment in a patent case that explicitly states that FDA may not approve "ANDA No. 214369" until three patents expire. That same court issued a further order that, by its terms, confirms that the final judgment governs ANDA No. 214369 as

18

amended.  Applying those orders as worded, FDA refused to grant Norwich immediate approval for "ANDA No. 214369."  Because the orders' plain text resolves this case, the Court should affirm.

**B.**    Context only confirms FDA's interpretation.  Twice, Norwich sought to narrow the final judgment in the patent case, seeking a judgment that would expressly allow Norwich to carve out the patented indication and secure immediate approval.  And twice, that request was denied.  Norwich cannot now claim the patent court implicitly intended to allow conduct that it expressly rejected.  In fact, that argument is hard to square with Norwich's own representations in patent litigation.  Uniformly, Norwich characterized the patent judgment as delaying approval for ANDA No. 214369 even as to the indication as to which the patents were held to be invalid or not infringed.

**II.**    Norwich skims over the plain terms of the court orders in the patent case, focusing mainly on other considerations that are largely beside the point.  But those arguments are in all events mistaken on their own terms.

**A.**    Based on three errors, Norwich misunderstands the record in the patent litigation.  First, the district court in the patent case declined

to consider a distinction between an ANDA and future, amended versions of that ANDA. So there is no reason to think that a reference to the "infringing ANDA" was meant to limit the patent judgment to the "then-operative" ANDA. Second, Norwich conflates the question of whether the district court in the patent case should have resolved new merits arguments about its amended application with the remedial question of whether the judgment that had been entered in light of Norwich's prior litigation choices should extend to all amended versions of the application. The district court explained why Norwich should not be allowed to raise new merits arguments, and in doing so, it confirmed the scope of the remedy issued in the final judgment. Third, Norwich conflates the Delaware district court's recognition that there might still be open questions before FDA about whether the ANDA as amended should be approved at all with an implicit suggestion that FDA could ignore the court's resetting order that delayed the effective date for any such approval.

**B.** Norwich relies on statutory and regulatory arguments that are both waived and flawed. Norwich confirmed to the district court in this case that it was not contending that the statutory and regulatory

frameworks limit the scope of a resetting order by a patent court. And in all events, that argument would be—and a version of it was—properly addressed to the district court in the patent case and to the Federal Circuit, each of which rejected it. To the extent Norwich asserts that the statutory and regulatory frameworks provide useful insight into the intended scope of the orders in the patent case, it misunderstands the relevant provisions, and in any event, this evidence cannot overcome more direct evidence of the intent of the court that issued the relevant order.

**C.**     Finally, Norwich cannot rely on the purpose and history of the Hatch-Waxman Amendments. Again, this argument is built on Norwich's misunderstanding of the statutory and regulatory frameworks. And any adverse effects of the orders in the patent case are a product of Norwich's own litigation choices, not an affront to the statutory purposes.

## STANDARD OF REVIEW

Grants of summary judgment are reviewed de novo. *Ipsen Biopharmaceuticals, Inc. v. Becerra*, 108 F.4th 836, 840 n.1 (D.C. Cir. 2024). Like the district court, this Court reviews agency action to

determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## ARGUMENT

### I. FDA Correctly Interpreted the Court's Orders in the Patent Case

This case concerns FDA's interpretation of a district court's orders in a patent case, which bar FDA from providing "final approval" for "ANDA No. 214369" until three patents expire. JA___; JA__ [AR42 ¶ 5 (final judgment); AR358-362 (Rule 60 decision)]. In refusing to provide final approval for ANDA No. 214369 until those patents expire, FDA applied the orders according to their "plain terms," and the Court need go no further to resolve this appeal. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009). In all events, the record in the patent case and the broader context only confirms the orders' scope. This Court should affirm.

### A. FDA Applied the District Court Orders According to Their Text

It has long been established that "the mere construction of a decree involves no challenge of its validity." *St. Louis., Kan. City & Colo. R.R. Co. v. Wabash R.R. Co.*, 217 U.S. 247, 250-51 (1910). "[C]lear and unambiguous" decrees must be given their "plain meaning." *E.g.*, *United*

*States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005) (quotation marks omitted). Only when the text is ambiguous do courts look at the broader record when resolving that ambiguity. *E.g., Travelers*, 557 U.S. at 150; *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 286 (3d Cir. 1991); *Negrón–Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008).

Here, the U.S. District Court for the District of Delaware issued two orders that, by their terms, limited Norwich's ability to secure FDA approval for its Abbreviated New Drug Application No. 214369.

First, at the end of patent litigation between Norwich and Salix, that court entered a final judgment. The Delaware district court found that Norwich's proposed use of Salix's drug (rifaximin) would infringe certain of Salix's patents. And because the infringement litigation arose from ANDA No. 214369, the court barred the "Food and Drug Administration" from granting "final approval" for "ANDA No. 214369" until the three relevant patents expire. JA__ [AR42 ¶ 5].

Second, after Norwich sought relief from the patent final judgment, the court issued another order clarifying its judgment. By this point, Norwich had amended ANDA No. 214369 so that it no longer sought approval for the infringing use. JA__ [AR359]. Thus, Norwich wanted to

23

narrow (or vacate) the final judgment, freeing it to seek immediate FDA approval. JA__ [AR358]. The district court in the patent case refused, again explaining that the judgment prohibited FDA from approving "the ANDA before the latest expiration (in about 2029) of the patents on which Plaintiffs won." JA__ [AR359]. Norwich had made "strategic choices" and had to "live with the "consequences of those choices," JA__ [AR360]; it could not "litigate a case through trial and final judgment" and then "change the ANDA to what it wishes it had started with" and escape the effect of the judgment, JA__ [AR362].

Read together, the text of these orders is clear. The final judgment prevents the "Food and Drug Administration" from granting "final approval" for "ANDA No. 214369." JA__ [AR42 ¶ 5]. And as the reconsideration decision made clear, the phrase "ANDA No. 214369" bars approval even for the amended version of that ANDA. *See* JA__ [AR359]. The court held that Norwich could not "change [its] ANDA" and escape the judgment's consequences. JA__ [AR362]. Put frankly, in this litigation, Norwich asks for precisely what the orders expressly limit: final approval of ANDA No. 214369 before the relevant patents expire.

The district court was right to deny that request, and this Court should affirm.

## B.    Context Confirms FDA's Interpretation

Even if the court orders were ambiguous, context would confirm FDA's interpretation.    No one—Norwich included—understood the orders as limited to the original, unamended ANDA No. 214369.

Consider the circumstances surrounding the Delaware final judgment.  Norwich and Salix disputed the scope of that judgment.  JA__ [AR43].  Norwich advocated for a limited order, which would have barred only approval of an ANDA containing the indication as to which patent infringement had been established.  JA__ [AR43].  Salix, on the other hand, sought an order that would delay FDA approval of "ANDA No. 214369," period.  The importance of this dispute was clear: Norwich wanted freedom to carve out the patented indication and then receive immediate FDA approval.  *See* Joint Letter to the Honorable Richard G. Andrews Regarding Proposed Form of Judgment, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-430 (D. Del. Aug. 15, 2022), Dkt. No. 196 at 1-4.

The district court in the patent case denied Norwich that freedom, adopting Salix's proposal. JA__ [AR41]. In a brief memorandum, the court stated that it would enjoin approval of the ANDA because no such carve-out amendment was before it and that its order would "bar[] FDA approval, because the FDA cannot approve the ANDA before the patents expire." JA__-__ [AR43-45]. Nothing in that explanation suggested that Norwich could carve out the patented indication and secure immediate approval. *See* JA__-__ [AR43-45]. Nor is there any suggestion that the court meant to give Norwich a partial victory on this score. Rather, Salix won, and the final judgment prevented approval of ANDA No. 214369, without the narrower language Norwich had proposed. JA__ [AR41].

Norwich itself viewed the judgment as a bar to immediate approval. A month after judgment was entered, Norwich carved out the patented indication from ANDA No. 214369. JA__-__ [AR54-58]. Then, it sought relief from the final judgment in the patent case—again seeking freedom to secure immediate approval of its now-amended ANDA. JA__ [AR263]. In Norwich's own words, "the Judgment" acted as an "absolute prohibition on FDA's approval" of its "Amended ANDA." JA__ [AR274].

And Norwich thought that such a judgment was "no longer equitable." JA__ [AR281].

The district court disagreed, however. The court stated that Norwich "made various strategic choices," which led to an order barring FDA approval of ANDA No. 214369, and the court stated Norwich must "live with the consequences of those choices." JA__ [AR360]. Norwich had chosen to "change course" by amending its ANDA, but that did not, in the court's view, qualify as a changed circumstance that would justify granting Norwich relief from judgment. JA__ [AR360]. In the end, the court denied Norwich the relief it sought—a judgment that would allow immediate approval for ANDA No. 214369 as amended—and made clear that its judgment stood even in light of the amendment.

If Norwich thought that was wrong, the proper recourse was to appeal, not to collaterally attack the judgment of a Delaware district court by asking FDA or a district court in the District of Columbia to ignore it. Indeed, Norwich did appeal, asking the Federal Circuit to overturn the Delaware district court's analysis. In so doing, Norwich again recognized the plain meaning of the orders that had been issued in the patent litigation. *See* JA__-__ [Dkt. 65 at 39] (explaining that "no

party" advocated for Norwich's "unconventional reading" before the Federal Circuit). It characterized the final judgment as a prohibition on approval "for *any* indication until the expiration of the [relevant] patents"—not just the indication as to which validity and infringement had been established. JA__-__ [Dkt. 39-1 at 1-2] (Motion to Expedite Federal Circuit Appeal). And it sought expedited review on that basis. *See id.*

The Federal Circuit affirmed on all fronts. *See Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056, 1067-69 (Fed. Cir. 2024).[6] According to the Federal Circuit, infringement resulted "from the ANDA's submission," so it was appropriate for the district court in the

---

[6] When FDA issued the tentative approval decision on appeal, and when the district court entered final judgment in this case, the Federal Circuit had not yet issued its decision. As a result, the Federal Circuit's opinion is not part of the administrative record, and it was not considered by the agency in the tentative approval decision on appeal. JA __ [AR365-378]. Separately, in response to a request from Norwich, FDA has issued a new tentative approval decision—which is now the effective decision. That decision considered the Federal Circuit's opinion and again granted Norwich only tentative approval for ANDA No. 214369.

Despite these facts, the Court is well-equipped to decide this appeal on the present record. FDA's new tentative approval decision relied on the same reasoning as the decision on appeal, concluding that the Federal Circuit's opinion did not alter FDA's prior conclusion. And interpreting the Federal Circuit decision is a question of law, which this Court considers de novo. *See Ipsen Biopharmaceuticals*, 108 F.4th at 840 n.1.

patent case to delay approval of Norwich's "infringing ANDA submission." *Id.* at 1068 (quotation marks omitted).  This did not stop Norwich from filing an entirely "*new* non-infringing ANDA,"[7] but it did prevent final approval of "ANDA No. 214369"—even though, as the Federal Circuit recognized, that ANDA had already been amended.  *Id.* at 1068 & n.10 (emphasis added).

In sum, the context could not be clearer.  Without fail, Norwich understood the final judgment in the patent case as a complete bar on approval of its ANDA—regardless of amendment.  It tried to narrow that judgment, both through reconsideration and on appeal, but it lost.  Now, Norwich claims the judgment is "best read *implicitly* to include the qualifying language that the [patent] court *explicitly* declined to include—twice."  JA__ [Dkt. 65 at 32].  That cannot be correct, particularly given Norwich's concession that a judgment must be interpreted "with reference to the issues it was meant to decide."  *See* Appellant's Br. 42 (quotation marks omitted) (collecting authorities).

---

[7] Norwich has exercised this option by amending ANDA No. 214370, which is the subject of a related appeal (No. 25-5137) that is pending before this Court.

## II. Norwich Cannot Overcome the Plain Text of the Delaware Court Orders

Norwich skims over the "plain terms" of the orders in the patent case, which together "unambiguously apply" to delay approval of ANDA No. 214369 as amended. *See Travelers*, 557 U.S. at 150. It identifies no ambiguity in the orders, and for that reason, its arguments based on the background statutory scheme or background facts are irrelevant. But these arguments are in any event mistaken on their own terms.

### A. Norwich Misunderstands the Record in the Patent Case

Norwich principally argues that the final judgment in the patent case "did not even purport to delay approval of the (then-non-existent) amended ANDA" and that the court's Rule 60 decision "reinforces" that conclusion. Appellant's Br. 48; *see* Appellant's Br. 40-53. This argument is built on several misunderstandings—which generally relate to how ANDAs are processed and litigated. With a correct understanding of those issues, it is clear the record does not support Norwich's position.

**1.** Throughout its brief, Norwich elides the distinction between amending an existing ANDA and submitting a new ANDA. It treats its "amended '369 ANDA" as if it were something fundamentally different

from the "original '369 ANDA." Appellant's Br. 8; *see also* Appellant's Br. 25, 33-34. But that is not consistent with the statutory and regulatory schemes. An amendment can "revise existing information or provide additional information," 21 C.F.R. § 314.96(a)(1), but it does not generally result in a new ANDA. And while the statutory scheme recognizes the possibility of amendments, it does not suggest that amendments constitute a new ANDA. *See* 21 U.S.C. § 355(j)(2)(D).

Failure to appreciate this distinction leads Norwich to misunderstand the orders in the patent case. When the court in that case referred to the "infringing ANDA," explaining the scope of its judgment, this was not a reference to the "then-operative" ANDA—as Norwich claims. Appellant's Br. 43-45 (emphasis omitted) (quoting JA__ [AR44]). The district court's orders made no distinction between a "then-operative, pre-amendment ANDA" and any "future, amended version" of that ANDA. *See* Appellant's Br. 43. Instead, the court was referring to "ANDA No. 214369," JA__ [AR41], which, as the court made clear, included all amendments Norwich had made or would make to the relevant application.

**2.** Norwich also conflates the Delaware district court's discussion of whether it was prepared to adjudicate new patent issues after final judgment with an effort to walk back the judgment that it had entered. The patent case was initiated because Norwich had submitted an ANDA that, according to Salix, infringed multiple valid patents. Congress has deemed submitting such an ANDA to be an act of infringement, so in this case, the "relevant" act of "infringement" is "the submission of [an] ANDA that included an infringing use." *Salix*, 98 F.4th at 1068. The question before the Delaware district court was therefore whether the ANDA proposed conduct—either the manufacturing of a patented drug substance or the use of the drug for a patented method—that would infringe a valid patent. Having answered that question in the affirmative, the court entered a judgment that prohibited the ANDA from being approved until all the patents that had been held to be valid and infringed had expired. The Federal Circuit concluded that this judgment was proper and rejected Norwich's suggestion that a judgment should be tied to whether particular indications remained in the ANDA. *See id.* (discussing 35 U.S.C. § 271(e)(4)).

Norwich fails to appreciate the difference between the scope of the infringement that was found and the scope of the judgment that was ultimately issued. And this distinction explains why Norwich misunderstands other aspects of the record in the patent case. For example, in explaining its final judgment, the district court in the patent case recognized that Norwich "may . . . carve out" the indication that was held to infringe a valid patent, but it refused to address a "label" that was "not before [it]." JA__ [AR44]. This is not, as Norwich suggests, an effort to limit the scope of the court's judgment. Rather, that passage is about questions of infringement—as the topic sentence makes clear. JA__ [AR43] ("The scope of my ruling is that the HE patents are not invalid, and that the HE indication would infringe the HE patents."). The court refused to adjudicate new questions of infringement based on an amended ANDA that was not in effect throughout the litigation. JA__ [AR44]. But the court's unwillingness to resolve the patent issues that might arise from an amended ANDA does nothing to narrow the court's final judgment. To the contrary, it reflects a recognition that determining the date upon which an amended ANDA could properly be approved

33

would require resolving essentially a new patent case based on that amended ANDA; declining to do so did not narrow the final judgment.

Norwich's treatment of the Rule 60 order is similar. Norwich correctly points out that the Delaware district court "refused to consider the amended ANDA in any way." *See* Appellant's Br. 49. But that does not mean that the court did not mean for its judgment to apply to the amended ANDA—an issue that, as noted above, was definitively resolved against Norwich. Rather, the court meant that it refused to consider whether the amended ANDA would infringe any valid patent, which would have been the predicate for granting Norwich the relief that it sought—alteration of the final judgment to allow the ANDA to be approved immediately. The court pointed out, in particular, that whether Salix had "state[d] a claim" for patent infringement based on the amended ANDA was a "new issue after judgment" that would require a "second litigation." JA__ [AR361]. And the court refused to rule on that question "in a summary proceeding." JA__ [AR362]. It also concluded, as discussed above, that, as a result, its original judgment precluding approval of the ANDA until at least October 2029 should stand. The

Federal Circuit agreed, and Norwich's efforts to collaterally attack that determination are improper.

**3.** Norwich also confuses two aspects of FDA procedure. The statutory and regulatory framework draws a distinction between a determination that an ANDA has met the scientific and technical requirements for approval and the "effective date" for such approval. *See* 21 U.S.C. § 355(j)(5)(A)-(B). FDA determines first that an ANDA has met the requirements for approval. *See id.* Then, it considers when that approval will be effective—either immediately in the case of a final approval or at some point in the future in the case of a tentative approval. *Id.* Relevant here, approval will be only tentative if a court has directed that final approval is not permitted until after one or more patents expire. *Id.* § 355(j)(5)(B).

This distinction explains why the district court in the patent case did not "contemplate[]" that Norwich's amended ANDA would be "quickly approved under the court's prior judgment." *Contra* Appellant's Br. 50. The court's recognition that "there [was] no information about if or when the FDA might *approve* the amended ANDA," JA__ [AR361] (emphasis added), merely addressed the possibility that the amended ANDA might

not satisfy the various criteria for approval unrelated to the patent decision. *E.g.*, *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam) (challenge based on those criteria, *i.e.*, FDA's grant of bioequivalence waivers for three ANDAs). But that says nothing about the effective date for such approval—which is a distinct question under the statutory framework. *See* 21 U.S.C. § 355(j)(5)(A)-(B).

The Delaware district court addressed this issue in the context of Norwich's argument about harm. Norwich claimed it was inequitable to leave the injunction in place because it ought to be able to enter the market right away. At the time, however, it was speculative to suggest that Norwich would be able to enter the market at all. JA__-__ [AR360-361]. FDA had not yet assessed the criteria for approving Norwich's ANDA, and those criteria were distinct hurdles Norwich had to clear before it could market rifaximin. *See Id.* This discussion of approval dates had nothing to do with the effective date of any (then-hypothetical) approval. And in any event, this stray observation cannot overcome the clear text of the Delaware district court's orders, as described above.

## B. Norwich's Statutory and Regulatory Arguments Are Flawed

Norwich next argues that FDA "should have read and applied the Delaware judgment in the precise manner prescribed by [the] FDA's enabling statute and implementing regulations." Appellant's Br. 33; *see also* Appellant's Br. 32-40. But that is exactly what FDA did. There is no basis for Norwich's suggestion that FDA should have reinterpreted the judgment to allow final approval of an ANDA at a time the court had explicitly rejected.

**1.** At the outset, Norwich gestures at a strong version of its position. *See* Appellant Br. 34-38. At times, it seems to be arguing that FDA statutes and regulations serve to limit the impact of the final judgment in the patent case—regardless of the intent of the court that issued it. Flavors of this argument appear throughout Norwich's brief. *E.g.*, Appellant's Br. 6 (arguing FDA's "timing rules do not apply" the Delaware judgment "to an amended ANDA without [the HE] certifications"); Appellant's Br. 34 (arguing that Section 271(e)(4) orders do not "directly bind FDA" and are instead limited by "the approval timing rules" in FDA statutes); *see also* Appellant's Br. 38-40.

But Norwich does not—and could not—make a full-throated argument to this effect. *See* Appellant's Br. 41 (recognizing concessions in district court). Norwich abandoned this exact position in district court. *See* JA__; JA__-__ [Dkt. 65 at 29; Dkt. 70 at 9-10]. As the district court explained, Norwich did not posit that "the FDA acted unreasonably or in contravention of law by adhering to a district court order that, in Norwich's view, misunderstood the governing FDA regulations." JA__ [Dkt. 65 at 29]. After all, Norwich's position was not about the "binding" effect of the patent-court judgment "under the statute and the regulations." JA__-__ [Dkt. 70 at 9-10]. Rather, its position was about the "best construction" of that judgment—which admittedly constrained FDA's decision making. JA__; JA__-__ [Dkt. 65 at 30] (quotation marks omitted); [Dkt. 70 at 9-10].

This concession was pivotal because otherwise the district court would have lacked jurisdiction over Norwich's claims. See JA__-__ [Dkt. 65 at 29-30]. Norwich cannot contest the lawfulness of a judgment by a Delaware district court through a collateral attack either before the agency or before a district court in the District of Columbia. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *Smalls v. United States*, 471

F.3d 186, 192 (D.C. Cir. 2006). This includes any argument that Section 271(e)(4) orders must be limited to the "specific patent certification" that formed the basis for infringement. *See* Appellant's Br. 35. The Federal Circuit has already considered and rejected that argument. *Salix*, 98 F.4th at 1068. And Norwich is not entitled to two bites at that apple.

For that reason, Norwich would also lack a cause of action to pursue this stronger statutory argument. Norwich could, and did, challenge the scope of the patent judgment through direct appeal to the Federal Circuit. That avenue for relief was no doubt an "adequate remedy in a court," thereby precluding review under the APA. *E.g.*, *Bennett v. Spear*, 520 U.S. 154, 161–62 (1997) (quotation marks omitted).

As the district court recognized, Norwich had to concede the stronger version of its statutory and regulatory argument to avoid these problems. JA__-__ [Dkt. 65 at 9-10]. Having waived this argument in district court, Norwich cannot resurrect it on appeal.

**2.** In all events, Norwich is wrong to suggest that FDA's timing rules can limit the scope of a Section 271(e)(4) resetting order. *See* Appellant's Br. 34-36. The relevant patent provision, 35 U.S.C. § 271(e)(4)(A), states that "the court shall order the effective date of any

approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." That is exactly what the Delaware district court did here. As discussed, Norwich believes that after its ANDA was amended, the relevant patents were no longer infringed. But the Delaware district court declined to take up that argument, the Federal Circuit affirmed, and Norwich cannot collaterally attack that decision here.

The provisions governing FDA approval work in concert with Section 271 and state that, if the district court rules in favor of the party asserting patent protection and "if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of title 35." 21 U.S.C. § 355(j)(5)(B)(iii)(II)(bb). That is exactly what FDA did here.

FDA regulations do not purport to, and could not, change any of this. *See Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1366 (Fed. Cir. 2008) (FDA rules "do[] not limit a court's authority to reset" the effective date for an ANDA); *see also Vanda Pharms. Inc. v.*

*West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1139 (Fed. Cir. 2018).

Instead, as the Federal Circuit has recognized, FDA timing rules merely "instruct[] the agency regarding its responsibilities to process an ANDA." *Ortho-McNeil*, 520 F.3d at 1366.

By extension, nothing in FDA's regulations could serve as a limit on courts' authority under Section 271(e)(4). *Contra* Appellant's Br. 39-40. That statute imbues district courts with the authority to issue resetting judgments, unencumbered by FDA timing rules. Accordingly, FDA regulations cannot "dictate[] the legal consequences and the effect of" those judgments. *Contra* Appellant's Br. 39. After all, regulations cannot "trump the plain meaning of a statute." *See Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 11 (D.C. Cir. 2002).

Accordingly, after the Delaware district court orders were issued, FDA was not required to "run through [its] four statutory timing rules as to *each patent certification*" without consideration of those orders. *Contra* Appellant's Br. 36. And FDA regulations that contemplate a post-judgment carveout in circumstances where a patent is held to be valid and infringed merely state that after such amendments "the ANDA will no longer be considered to contain a paragraph IV certification to the

patent." *See* 21 C.F.R. § 314.94(a)(12)(viii)(A). The inclusion of a paragraph IV certification is relevant to various timing rules that govern when FDA may issue a final approval. *See generally* 21 U.S.C. § 355(j)(5). But the final approval here was not denied because of how FDA applied the timing rules to the ANDA, it was denied because a court had ordered FDA to delay approval until, at the earliest, October 2029. And nothing in the regulations purports to instruct FDA to ignore a final judgment of a district court.

**3.** Unable to argue that FDA statutes or regulations limit the effect of the controlling patent-court judgment, Norwich must instead rely on a narrower argument. It contends that the statutory and regulatory framework is important context, which should be used to interpret the judgment. *E.g.*, Appellant Br. 42-48. The Delaware district court, in its opinion, must be assumed to have followed the law—not attempted to break it.

This argument fails for essentially the same reasons articulated above. There is no ambiguity in the Delaware district court's orders, so there is no room for Norwich's interpretation. In addition, the orders did not violate (or attempt to violate) any statutory or regulatory provision.

And although Norwich was entitled to register its disagreement with the Delaware district court's perception of its role in the statutory scheme, the proper forum to do so was on appeal to the Federal Circuit. Having lost there, it is not entitled to ask FDA to disregard the court's orders.

## C. The Purpose and History of the Statute Provide Norwich No Support

Norwich's final argument turns on the "purpose and history" of the Hatch-Waxman Amendments. This argument is far removed from the text and context surrounding the court orders that FDA applied according to their terms, and thus, it has little bearing on the key question here. In any event, Norwich's position is flawed.

The fundamental problem is that, in the complex context of patent litigation, Norwich's argument that the "statute and FDA's regulation[s] allow for swift approval of the ANDA for a separate, non-infringing indication," Appellant's Br. 54, is beside the point. The question presented here is not whether an ANDA that seeks approval only for non-infringing indications should be approved. The question instead is whether FDA may grant such swift approval in defiance of clear district court orders directing it not to approve the ANDA, regardless of amendment.

43

There may be legal and policy arguments surrounding the proper scope of a resetting order under Section 271(e)(4), but the district court and the Federal Circuit here determined that Norwich should be required to live with its choice about how to proceed, at least insofar as it sought to get a particular ANDA approved, and that if it wanted to pursue a different course it would need to submit a different ANDA.[8]  Again, whether the Federal Circuit was right or wrong about that is not at issue here, but there is at least a legitimate interest, consistent with the scheme, in the finality of judgments in this context.

Either way, these policy questions are of no moment here.  Even if Norwich is correct that the system would operate more efficiently in a different manner, it provides no basis for FDA to ignore unambiguous court orders that have been affirmed on appeal.

---

[8] Norwich has already amended ANDA No. 214370 to seek approval for the use of 550 mg rifaximin to treat IBS-D.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

ROBERT FOX FOSTER
   *Acting General Counsel,*
   *Chief Counsel for Foods,*
     *Research, and Drugs*
   *U.S. Department of Health and*
     *Human Services*

SEAN R. KEVENEY
   *Chief Counsel*
   *Food and Drug Administration*

WENDY VICENTE
   *Deputy Chief Counsel, Litigation*

JAMES ALLRED
   *Associate Chief Counsel*
   *Office of the Chief Counsel*
   *U.S. Food and Drug*
     *Administration*
   *10903 New Hampshire Ave.*
   *White Oak 31*
   *Silver Spring, MD  20993-0002*

BRETT A. SHUMATE
   *Assistant Attorney General*

DANIEL TENNY

*/s/ J. Kain Day*

J. KAIN DAY
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7234*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4214*
   *J.Kain.Day@usdoj.gov*

September 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,725 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ J. Kain Day*
J. Kain Day

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ J. Kain Day*
J. Kain Day

# ADDENDUM

# TABLE OF CONTENTS

21 U.S.C. § 355.................................................................. A1

35 U.S.C. § 271(e) ............................................................ A4

**21 U.S.C. § 355**

**§ 355 New drugs**

**(a) Necessity of effective approval of application**

No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug.

**(b) Filing application; contents**

(1)

(A) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a). Such persons shall submit to the Secretary as part of the application— . . .

(viii) the patent number and expiration date of each patent for which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner of the patent engaged in the manufacture, use, or sale of the drug, and that—

(I) claims the drug for which the applicant submitted the application and is a drug substance (active ingredient) patent or a drug product (formulation or composition) patent; or

(II) claims a method of using such drug for which approval is sought or has been granted in the application. . . .

**(j) Abbreviated new drug applications**

(1) Any person may file with the Secretary an abbreviated application for the approval of a new drug.

(2)

(A) An abbreviated application for a new drug shall contain— . . .

(vii) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the listed drug referred to in clause (i) or which claims a use for such listed drug for which the applicant is seeking approval under this subsection and for which information is required to be filed under subsection (b) or (c)—

(I) that such patent information has not been filed,

(II) that such patent has expired,

(III) of the date on which such patent will expire, or

(IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted; and

(viii) if with respect to the listed drug referred to in clause (i) information was filed under subsection (b) or (c) for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection, a statement that the method of use patent does not claim such a use. . . .

(5)

(A) Within one hundred and eighty days of the initial receipt of an application under paragraph (2) or within such additional period as may be agreed upon by the Secretary and the applicant, the Secretary shall approve or disapprove the application.

(B) The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined by applying the following to each certification made under paragraph (2)(A)(vii): . . .

(iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, an action is brought for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2) before the date on which the application (excluding an amendment or supplement to the application), which the Secretary later determines to be substantially complete, was submitted. If such an action is brought before the expiration of such days, the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court

may order because either party to the action failed to reasonably cooperate in expediting the action, except that—

(I) if before the expiration of such period the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity), the approval shall be made effective on—

(aa) the date on which the court enters judgment reflecting the decision; or

(bb) the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed;

(II) if before the expiration of such period the district court decides that the patent has been infringed—

(aa) if the judgment of the district court is appealed, the approval shall be made effective on—

(AA) the date on which the court of appeals decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity); or

(BB) the date of a settlement order or consent decree signed and entered by the court of appeals stating that the patent that is the subject of the certification is invalid or not infringed; or

(bb) if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of title 35; . . . .

**35 U.S.C. § 271(e)**

**§ 271 Infringement of patent**…

(e) . . .

(2) It shall be an act of infringement to submit—

(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent, . . .

(4) For an act of infringement described in paragraph (2)—

(A) the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed, . . . .