IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

NORWICH PHARMACEUTICALS, Inc.,

*Plaintiff - Appellant,*

v.

Robert F. KENNEDY, in his official capacity as Secretary of Health and Human Services; Martin MAKARY, in his official capacity as Commissioner of Food and Drugs; UNITED STATES FOOD AND DRUG ADMINISTRATION,

*Defendants - Appellees,*

&

SALIX PHARMACEUTICALS, Inc.,

*Intervenor for Defendant - Appellee.*

———————

On appeal from the
United States District Court for the District of Columbia

———————

# SALIX'S RESPONSE BRIEF

———————

Bryan Killian
Douglas Hastings
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In accordance with Circuit Rule 28(a)(1), Intervenor for Defendant – Appellee Salix Pharmaceuticals, Inc. certifies:

## I.    Parties and Amici

The Plaintiff – Appellant is Norwich Pharmaceuticals, Inc.

The Defendants – Appellees are Robert F. Kennedy Jr., in his official capacity as Secretary of Health and Human Services and Robert McKinnon Califf, M.D., in his official capacity as Commissioner of Food and Drugs; and the United States Food and Drug Administration.

Intervenor for Defendants – Appellees is Salix Pharmaceuticals, Inc.

Teva Pharmaceuticals USA, Inc. moved to intervene as defendant in district court, but the district court denied the motion without prejudice.

There are no *amici curiae* in this case.

## II.    Rulings Under Review

The rulings under review are: (1) an Order, Dkt. 66, filed on November 1, 2023, before the U.S. District Court for the District of Columbia in No. 23-cv-1611; and (2) a Memorandum Opinion, Dkt. 65, filed on

November 1, 2023, before the U.S. District Court for the District of Columbia in No. 23-cv-1611, reported at 703 F. Supp. 3d 1.

## III.    Related Cases

This case is related to *Norwich Pharmaceuticals Inc. v. Kennedy*, No. 25-5137 (D.C. Cir.). A motions panel directed the Clerk to "schedule No. 23-5311 and No. 25-5137 for oral argument on the same day before the same panel." Order, *Norwich Pharmaceuticals Inc. v. Kennedy*, No. 23-5311 (D.C. Cir. May 21, 2025).

This case is also related to *Salix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567 and 145 S. Ct. 983 (2024) and *Salix Pharmaceuticals, Inc. v. Norwich Pharmaceuticals, Inc.*, No. 1:24-cv-7140 (D.N.J. filed June 20, 2024) that involved substantially the same parties and similar issues.

/s/ Bryan Killian
Bryan Killian
Douglas Hastings
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Intervenor for Defendant – Appellee Salix Pharmaceuticals, Inc. certifies:

Salix Pharmaceuticals, Inc. in a pharmaceutical company specializing in prevention and treatment of gastrointestinal diseases and  disorders.

The parent company of Salix Pharmaceuticals, Inc. is Bausch Health Companies Inc., which owns 10% or more of stock in Salix Pharmaceuticals, Inc.

/s/ Bryan Killian
Bryan Killian
Douglas Hastings
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

# CONTENTS

Certificate as to Parties, Rulings, and Related Cases.............................i

Corporate Disclosure Statement...............................................iii

Authorities.................................................................... vi

Glossary ...................................................................... x

Questions Presented................................................. 1

Introduction ....................................................... 2

Statutes and Regulations........................................... 8

Background......................................................... 9

I.    Statutory Background....................................... 9

    A.    The FDCA links the effective date of ANDAs to the
        outcome of patent-infringement litigation. ........... 9

    B.    The effect of an amendment carving out an indication
        from an ANDA depends on when the amendment is
        filed. ..................................................... 14

II.   Factual Background ....................................... 17

    A.    Salix sues Norwich for making twenty-three Paragraph
        IV certifications. .................................. 17

    B.    Norwich goes all in on both indications—and loses. ......... 18

    C.    Judge Andrews rebuffs Norwich's gamesmanship.............. 21

        1.    Judge Andrews rejects Norwich's narrow
            proposed judgment and blocks FDA from
            approving "ANDA No. 214369" until October
            2029. ............................................. 21

        2.    Norwich argues that its carveout amendment
            satisfies the original judgment. ................. 23

        3.    Judge Andrews rejects Norwich's motion to
            amend the judgment. ............................ 24

D.   The Federal Circuit affirms across the board, and the
     Supreme Court denies review.............................................. 26

E.   FDA tentatively approves Norwich's amended ANDA. ...... 30

F.   In a last-ditch effort, Norwich sues FDA in D.D.C. for
     following Judge Andrews' judgment.................................... 31

Summary of Argument........................................................................... 35

Argument................................................................................................. 39

I.   FDA's tentative approval of ANDA 214369 was neither
     arbitrary, capricious, nor contrary to law..................................... 39

     A.   FDA cannot fully and immediately approve Norwich's
          ANDA without a noninfringement finding........................... 39

          1.   After an applicant makes a Paragraph IV
               certification, FDA must set the ANDA's effective
               date in accordance with the date of a
               noninfringement finding or the date written in an
               infringement finding. .................................................... 39

          2.   FDA regulations don't permit applicants to
               remove Paragraph IV certifications made in their
               original applications...................................................... 43

     B.   As Norwich itself argued, Judge Andrews' judgment
          blocks FDA from approving "ANDA No. 214369"
          regardless of the carveout amendment. .............................. 47

          1.   The text of the order .................................................... 48

          2.   Context ...................................................................... 50

     C.   Norwich is distorting the FDCA, FDA's regulations,
          and the infringement proceedings to deprive Salix of its
          patent rights....................................................................... 57

II.  In no event could the Court order FDA to approve ANDA
     214369 immediately. ........................................................................ 59

Conclusion ............................................................................................... 62

Certificate of Compliance....................................................................... 63

# AUTHORITIES

CASES

*Agostini v. Felton*, 521 U.S. 203 (1997)...................................46

*Am. Fed. of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153 (D.C. Cir. 1981)...................47

*Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241 (Fed. Cir. 2000)...................................13

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012)...................................58

*Carcieri v. Salazar*, 555 U.S. 379 (2009)...................................49

*Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ...............................................46

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ............49

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982) ...............................................56

*Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661 (1990) .........................................9, 57

*Ferring B.V. v. Watson Lab'ys, Inc.-Fla.*, 764 F.3d 1382 (Fed. Cir. 2014).....................16, 52

*Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021 (D.D.C. 1989) .............................................47

*Hayburn's Case,* 2 U.S. 408 (1792)..................................46

*Horne v. Flores*, 557 U.S. 433 (2009)..................................52

*In re Omeprazole Pat. Litig.*, 536 F.3d 1361 (Fed. Cir. 2008) .............................................13

*Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013)...................................46

*Purepac Pharm. Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004)...........................10

*Salix Pharms., Ltd. v. Norwich Pharms. Inc*, 98 F.4th 1056 (Fed. Cir. 2024) ...........................27-28, 52, 59

*Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729 (D.C. Cir. 2019)...................................56

## STATUTES

Federal Food, Drug, and
Cosmetic Act, ch. 675, 52 Stat.
1040 (1938)
21 U.S.C.
§ 355(a) ................................... 9
§ 355(j)(2)(vii) ...................... 42
§ 355(j)(2)(A)(vii)(I)–(IV) .... 10
§ 355(j)(2)(A)(viii) .......... 10, 22
§ 355(j)(2)(D)(i) .................... 14
§ 355(j)(5)(B) ... 1, 5, 11, 15, 41
§ 355(j)(5)(B)(i) .................... 11
§ 355(j)(5)(B)(ii) ................... 11
§ 355(j)(5)(B)(II)(aa)(BB) .... 12
§ 355(j)(5)(B)(iii)
............................ 12-13, 41, 57
§ 355(j)(5)(B)(iii)(I) .... 1, 16, 42
§ 355(j)(5)(B)(iii)(II) .............. 1
§ 355(j)(5)(B)(iii)(I)(aa)
...................................... 12, 43
§ 355(j)(5)(B)(iii)(I)(bb) . 12, 42
§ 355(j)(5)(B)(iii)(II) ...... 40, 42
§ 355(j)(5)(B)(iii)(II)(aa) ...... 43
§ 355(j)(5)(B)(iii)(II)(aa)(BB)
.............................................. 42
§ 355(j)(5)(B)(iii)(II)(bb)
...................................... 12, 16
§ 355(j)(5)(B)(iv)(I) .............. 60

Hatch-Waxman Act, Pub. L. No.
98-417, 98 Stat. 1585 (1984)
35 U.S.C.
§ 271(e)(1) ........................... 10
§ 271(e)(2)(A) ............... 11, 18
§ 271(e)(4)(A) ..... 12-13, 22, 32

## RULES & REGULATIONS

21 C.F.R.
§ 314.3(b) ............................ 13
§ 314.50(i)(1)(iii) ................. 44
§ 314.94(a)(12)(iii) .............. 44
§ 314.94(a)(12)(viii) 15, 43, 45
§ 314.107(b)(1)(ii) ............... 44
§ 314.107(b)(3) .................... 44

Abbreviated New Drug
Applications & 505(b)(2)
Applications, 80 Fed. Reg. 6802
(Feb. 6, 2015) ...................... 44

Fed. R. Civ. P.
60(b) ............. 25-26, 28, 34, 53
60(b)(5) .................... 23, 30, 52
60(b)(6) ................................ 23

## OTHER AUTHORITIES

*Black's Law Dictionary* (12th ed.
2024) ................................... 42

FDA, *ANDA Submissions—Amendments and Requests for Final Approval to Tentatively Approved ANDAs* (Jan. 2024), *available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/anda-submissions-amendments-and-requests-final-approval-tentatively-approved-andas ............................................. 14

Joint Proposed Pretrial Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 147 (D. Del. February 28, 2022, 2022) ... 19

Joint Proposed Trial Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 153 (D. Del. March 8, 2022) .................... 19

*Norwich v. FDA (Norwich APA II)*, No. 1:25-cv-00091 (D.D.C. 2025), Dkt. 17, Ex. 9 [Jan. 10, 2025 Tentative Approval Letter] ............................................. 60

Norwich's Rehearing Petition, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir. May 13, 2024) ECF 74 ....................................... 29, 53

Oral Argument, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir.), https://www.cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/ ................... 27, 53

Oral Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 189 (D. Del. July 28, 2022) ............. 21

Petition for Writ of Certiorari, *Norwich Pharmaceuticals Inc., v. Salix Pharmaceuticals, Ltd., et al.* (S. Ct.) No. 24-294 Dkt. 1 ...................................... 29, 54

Principal and Response Brief For Defendant Cross-Appellant, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir.) ECF 38 .................. 26-27

*Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 196 (D. Del. August 15, 2022) ..... 21-22, 51

Scheduling Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 23 (D. Del. June 15, 2020) ............................. 18

Stipulation and Proposed Order,
Salix Pharms, Ltd. v. Norwich
Pharms., Inc., No. 1:20-cv-
00430, Dkt. No. 180 (D. Del.
May 12, 2022) ............3, 19-20

U.S. Patent No. 7,612,199..19

# GLOSSARY

|  |  |
|---|---|
| ANDA | abbreviated new drug application |
| FDA | Food & Drug Administration |
| FDCA | Food, Drug, & Cosmetic Act |
| HE | overt hepatic encephalopathy |
| IBS-D | irritable bowel syndrome with diarrhea |
| NDA | new drug application |
| Xifaxan 550 | Xifaxan® (rifaximin) 550 mg tablets |

# QUESTIONS PRESENTED

The effective date of an ANDA approval depends on "each certification made" by the applicant. 21 U.S.C. § 355(j)(5)(B). "[I]f the applicant made" a Paragraph IV certification and is sued for patent infringement, the effective date depends on the outcome of the litigation: among other things, if the court finds infringement, FDA cannot fully approve the ANDA before the date the court writes in its judgment. *Id.* § 355(j)(5)(B)(iii)(I)–(II).

When submitting ANDA 214369, Norwich made Paragraph IV certifications for Salix's patents. A district court found infringement of some patents and ordered Norwich's "ANDA No. 214369" not be approved before October 2029. Later, Norwich amended its ANDA and argued, without proof, that the amendment ends the infringement. FDA nevertheless did not fully approve the ANDA.

The questions presented are:

1. Does the FDCA forbid FDA from fully approving Norwich's ANDA before the date written in the district court's judgment?

2. Does the district court's judgment itself require FDA not to approve ANDA 214369 before October 2029, whether or not Norwich amends the ANDA?

# INTRODUCTION

The case Norwich presents to this Court is divorced from reality. At bottom, Norwich claims that FDA acted arbitrarily, capriciously, and contrary to law for taking the very action that Norwich told the District of Delaware, the Federal Circuit, and the Supreme Court that FDA was required by law to take. Norwich had it right the first time, and the district court's summary judgment should be affirmed.

The saga began when Norwich filed ANDA 214369, seeking FDA approval to market a generic version of Xifaxan 550, a drug marketed by Salix to treat IBS-D and reduce risk of HE recurrence. For all twenty-three unexpired patents Salix had listed for Xifaxan 550, Norwich made Paragraph IV certifications—assertions that Norwich's proposed generic will not infringe any of Salix's valid patents. Salix sued Norwich on all twenty-three patents.

The patent case was assigned to Judge Andrews of the District of Delaware, who ordered the parties to reduce the number of patents litigated at trial. Before trial, Norwich could have amended its ANDA in ways that would have focused the patents for trial. Norwich could have submitted an amendment dropping one of the two indications. Instead, Norwich dug in and even stipulated that it wouldn't "change the indications of use."

Stipulation and Proposed Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 180 (D. Del. May 12, 2022). Relying on Norwich's position, Salix selected seven patents for trial, some claiming rifaximin polymorphs, some covering the IBS-D indication, and some covering the HE indication.

After Salix prevailed on three HE patents, Norwich embarked on a lengthy and unsuccessful journey to renege on its strategic decision to defend its proposed generic on both indications. *First*, Norwich asked Judge Andrews for a judgment that would permit FDA to approve ANDA 214369 if Norwich carved out the HE indication from the proposed generic label. He refused and ordered that "ANDA No. 214369" not be approved before October 2029. *Second*, Norwich carved out the HE indication from the proposed generic label and moved to modify the judgment to "remove the absolute prohibition" on FDA's approval of ANDA 214369. Judge Andrews refused again. *Third*, Norwich appealed both losses to the Federal Circuit, arguing that the order blocking FDA from approving the amended ANDA violates federal law. The Federal Circuit affirmed. *Fourth*, Norwich petitioned for certiorari, decrying the "blanket ban of approval of 'ANDA No. 214369' irrespective of whether it seeks approval for any patented indication." The Supreme Court denied cert.

To no one's surprise, FDA issued a decision only tentatively approving Norwich's ANDA 214369, stating the ANDA cannot be fully approved before October 2029, the date Judge Andrews set. To everyone's surprise, the saga did not end there. Instead of filing a new, IBS-D-only ANDA, which would have teed up new infringement litigation to resolve conclusively whether an IBS-D-only ANDA infringes any of Salix's patents, Norwich brought this APA case against FDA. Norwich argues that the FDCA requires FDA to fully approve the amended ANDA *immediately*. Norwich also argues that it was contrary to law, arbitrary, and capricious for FDA to rely on Judge Andrews' order as the basis for withholding full approval because, Norwich claims, that order "does not say, or do, what either FDA or the district court thought that it did." AOB 41.

Norwich's duplicitous positions—telling Judge Andrews, the Federal Circuit, and the Supreme Court that FDA *cannot* approve the amended ANDA because of Judge Andrews' order while telling Judge Moss and this Court that FDA *must* fully approve the amended ANDA despite Judge Andrews' order—is an independent and sufficient ground to affirm Judge Moss's rejection of Norwich's APA claims. Not that the arguments Norwich makes here are correct; they are wrong on the law and on the facts.

On the law: the FDCA does not require FDA to fully approve an ANDA as soon as the applicant submits an amendment that, according only to the applicant's self-interested say-so, eliminates something found to infringe. The FDCA timing rules apply to "each certification *made* under paragraph (2)(A)(vii)." 21 U.S.C. § 355(j)(5)(B) (emphasis added). Once an applicant has made a Paragraph IV certification for a patent, if a court finds infringement of that patent, the FDCA requires FDA to withhold full approval until the patent expiration date written in the court's order.

Strictly following the statute's timing rules does not undermine carve-out amendments, as Norwich worries. *Pretrial* carveout amendments are beneficial for everyone because carving out a potentially infringing indication *before trial* often limits and focuses the number of issues for trial. The parties can focus their trial time, evidence, and arguments on the skinny label, and the district court can determine whether the skinny label infringes a subset of patents. If a pretrial carveout amendment truly eliminates an infringing use of a generic drug, the court will enter a finding of noninfringement as to patents claiming that use, which enables FDA to fully approve the ANDA immediately (if all other requirements are met).

*Post-judgment* carveout amendments, like the one Norwich submitted here, are a different animal. They are prone to abuse and can severely prejudice a patentholder. To protect patentholders, federal law gives the district court discretion to decide what to do about a post-judgment carveout amendment: depending on the circumstances and equities, the court may either modify its judgment and convert a finding of infringement into a finding of noninfringement, or it may retain the finding of infringement. That does not leave ANDA applicants without recourse, as Norwich worries, for they remain free to file a new ANDA without the infringing use, which in turn can form the basis for new infringement litigation to resolve, conclusively, whether the skinny label infringes.

On the facts: the infringement litigation in Delaware played out in accordance with the foregoing. Judge Andrews found Norwich's proposed ANDA infringes three of Salix's HE patents and entered an order barring "ANDA No. 214369" from being fully approved before October 2029. Norwich submitted a post-judgment carveout amendment, and as the Federal Circuit later affirmed, Judge Andrews properly declined to transform his infringement finding into a noninfringement finding. Salix had relied on Norwich's pretrial assurances about not amending its ANDA, and Norwich never proved at trial or after that an ANDA for an

IBS-D-only generic version of Xifaxan 550 doesn't infringe any of Salix's patents.

Norwich's argument that the FDCA *requires* FDA to immediately grant full approval to its amended ANDA, notwithstanding Judge Andrews' affirmed orders, has it exactly backward. FDA would violate the law and Judge Andrews' Order if it approved ANDA 214369 before October 2029. Judge Moss's correct decision should be affirmed.

# STATUTES AND REGULATIONS

All statutes and regulations are reproduced in the addendum to the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.

# BACKGROUND

## I.   Statutory Background

### A.   The FDCA links the effective date of ANDAs to the outcome of patent-infringement litigation.

No new drug, branded or generic, may be sold in the U.S. without FDA's approval. *See* 21 U.S.C. § 355(a). Decades ago, manufacturers of generic drugs—*i.e.*, drugs identical to FDA-approved branded drugs— risked liability for making or using patented inventions claiming branded drugs or their uses, "even if it was for the sole purpose of conducting tests and developing information necessary to apply for regulatory approval." *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 670 (1990). Scrupulous manufacturers thus waited until patents expired before undertaking preparatory work and then seeking FDA's approval to market a generic drug. Since it takes time to develop a drug product and for FDA to review new drug applications, "the combined effect of the patent law and the premarket regulatory approval requirement was to create an effective extension of the patent term." *Id.*

To cut down on those *de facto* extensions, Congress in 1984 enacted the Hatch-Waxman Act, which contains measures that enable manufacturers to develop a generic drug *before* patents claiming the branded drug

expire. The patent laws now declare that it is "not … an act of infringement" to make or use a patented invention if the sole purpose is to develop and submit a new drug application. *See* 35 U.S.C. § 271(e)(1).

The Hatch-Waxman Act did not license generic drug manufacturers to sell generic drugs before applicable patents expire, nor did it eliminate patent-infringement concerns. Submitting an ANDA to FDA itself can constitute an act of patent infringement, enabling a court to determine infringement, while FDA reviews the ANDA. Specifically, when generic drug manufacturers file ANDAs, they must formally take a position on all Orange Book-listed patents covering the branded drug and its uses. In some circumstances, when a patent claims a particular use of a branded drug, an ANDA applicant can foreswear seeking approval for that use, by filing a section viii statement disclaiming that use. *See* 21 U.S.C. § 355(j)(2)(A)(viii); *see also Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 880 (D.C. Cir. 2004). Short of that, an ANDA applicant must make a patent certification "with respect to each patent which claims the listed drug … or which claims a use for such listed drug for which the applicant is seeking approval." 21 U.S.C. § 355(j)(2)(A)(vii)(I)–(IV).

Many consequences flow from an applicant's certifications. Certifications control the date when FDA's approval of an ANDA can become effective. *See id.* § 355(j)(5)(B). "The approval of" an ANDA "shall be made effective on the last applicable date determined by applying" a series of timing rules "to each certification made" by the applicant. *Id.*

- If the applicant certifies that there are no patents (Paragraph I certification) or that a patent has expired (Paragraph II certification), "the approval may be made effective immediately." *Id.* § 355(j)(5)(B)(i).

- If the applicant certifies that it is not contesting infringement of a patent (Paragraph III certification), "the approval may be made effective" when the patent expires. *Id.* § 355(j)(5)(B)(ii).

- And, if the applicant certifies that it is contesting infringement and/or validity of a patent (Paragraph IV certification), another series of timing rules kicks in.

A patentholder may immediately file infringement claims against an applicant who submits an ANDA with a Paragraph IV certification. *See* 35 U.S.C. § 271(e)(2)(A). While those infringement proceedings are underway, the FDCA forbids FDA from fully approving the ANDA. FDA must wait until a district court decision, but no later than thirty months,

then set an effective date following the patent court's instructions. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

- If the applicant wins (*i.e.*, "the district court decides that the patent is invalid or not infringed" or the Federal Circuit reverses an adverse judgment), the approval can become effective on "the date on which the" district court or court of appeals enters judgment. *Id.* § 355(j)(5)(B)(iii)(I)(aa), (II)(aa)(AA).[1]

- If the patentholder wins (*i.e.*, "the district court decides that the patent has been infringed") approval can become effective "on the date specified by the district court" in its final order. *Id.* § 355(j)(5)(B)(iii)(II)(bb); *see* 35 U.S.C. § 271(e)(4)(A) ("[T]he court shall order the effective date of any approval of the drug … involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed.").

---

[1] If the applicant prevails by settlement or consent decree, the approval can become effective on the date the district court or court of appeals "sign[s] and enter[s]" an order "stating that the patent … is invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iii)(I)(bb) & (II)(aa)(BB). This provision confirms that, for purposes of FDA approval, settlements are not self-executing. FDA cannot set an approval based on the litigants' private decisions *until a court officially ratifies those decisions by order.*

Putting it all together: after a Paragraph IV certification is "made" and prompts timely patent litigation, the FDCA directs FDA to wait thirty months after the submission, then enter full approval on the date of a final decision in favor of the ANDA applicant or on the date the district court specifies in its judgment against the applicant.

FDA may not be "a party to the patent suit," AOB 11, but the agency's legal duty to follow and implement the effective date ordered by a district court's judgment is indisputable. If "the district court determines that the patent has been infringed, the FDA may not approve the ANDA until the effective date specified by the district court under section 271(e)(4)(A)." *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1367 (Fed. Cir. 2008) (citing 21 U.S.C. § 355(j)(5)(B)(iii)); *see also Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1245 (Fed. Cir. 2000) ("[T]he FDA cannot approve the ANDA until … the date the listed drug's patent expires, if the court finds the listed drug's patent infringed[.]" (citation omitted)).

Before the court-ordered effective date, FDA can issue only a *tentative* approval. A tentative approval indicates that a drug application satisfies the substantive requirements for approval yet, owing to statutory exclusivities, court orders, or other timing restrictions, cannot be immediately approved. *See* 21 C.F.R. § 314.3(b). To obtain full approval after a

tentative approval, an ANDA applicant must submit an amendment re-
questing full approval. FDA, *ANDA Submissions—Amendments and Re-
quests for Final Approval to Tentatively Approved ANDAs* (Jan. 2024),
*available at* https://www.fda.gov/regulatory-information/search-fda-
guidance-documents/anda-submissions-amendments-and-requests-fi-
nal-approval-tentatively-approved-andas ("Tentatively Approved ANDA
Guidance").

B. The effect of an amendment carving out an indication from an ANDA depends on when the amendment is filed.

FDA assigns each new ANDA a unique, six-digit identifying number.
Before FDA approves an ANDA, a drug manufacturer can submit
changes by submitting an "amendment." (Changes made after approval
are accomplished by a "supplement"). Amendments don't change an
ANDA's identification number, same as amendments to a plaintiff's com-
plaint don't change its docket number.

The FDCA and FDA regulations speak to the timing and content of
ANDA amendments. For example, amendments cannot change the un-
derlying drug so radically as to render it a "different listed drug."
21 U.S.C. § 355(j)(2)(D)(i). Whenever the FDCA or FDA regulations pro-
hibit making a particular change by amendment, an applicant remains

free to file a new ANDA embodying the change. A new ANDA will be assigned a new, six-digit identifying number.

Sometimes, after making a Paragraph IV certification for a patent claiming a particular use of a drug, an ANDA applicant embroiled in litigation opts to back down. One way to do so is to submit an amendment that attempts to carve out that use from the drug's proposed generic label. Contrary to Norwich's assertion, a carveout amendment does not withdraw or remove a Paragraph IV certification, such that the amended ANDA "no longer" contains the certification. *E.g.*, AOB 8, 40. The certification always remains part of the ANDA and is merely deemed superseded by the carveout amendment. *See* 21 C.F.R. § 314.94(a)(12)(viii) ("[T]he ANDA will no longer be considered to contain the prior certification.").[2]

A carveout amendment does not automatically and by its own force obviate applying the timing rules. The statutory timing rules apply "to each certification *made*," 21 U.S.C. § 355(j)(5)(B) (emphasis added), and a carveout amendment does not retroactively unmake a certification. A

---

2  An applicant can "withdraw" a certification only in one circumstance—when the applicant submits a certification for a patent that was not timely listed in the Orange Book. 21 C.F.R. § 314.94(a)(12)(viii).

carveout amendment can nonetheless influence the outcome of applying the timing rules, depending on when the applicant submits the amendment—before or after trial.

Before trial: When a "challenged original ANDA [i]s amended during the pendency of litigation"—before trial—the district court "conside[rs] the amended ANDA in determining the issue of infringement." *Ferring B.V. v. Watson Lab'ys, Inc.-Fla.*, 764 F.3d 1382, 1390 & n.7 (Fed. Cir. 2014). Trial then focuses on whether the amended ANDA infringes. If the amended ANDA does not infringe, the court enters a noninfringement finding, and FDA can make the amended ANDA's approval effective on the date of that judgment. *See* 21 U.S.C. § 355(j)(5)(B)(iii)(I).

After judgment: When an ANDA is amended belatedly after judgment, the district court will not have considered evidence on whether the *amended* ANDA infringes the asserted patents; the court will have considered evidence on the *original* ANDA only. At that point, owing to the applicant's delay, the question whether to consider the amendment is a matter left to the court's discretion, "guided by principles of fairness and prejudice to the patent-holder." *Ferring*, 764 F.3d at 1391.

- If the district court enters an infringement finding and declines to consider a carveout amendment, the timing rule of 21 U.S.C.

§ 355(j)(5)(B)(iii)(II)(bb) still applies, and FDA must set the ANDA's effective date as the date written in the court's judgment.

- If the court exercises its discretion to consider the carveout amendment, FDA must set the ANDA's effective date in accordance with the court's judgment about the amended ANDA.

Regardless of how the court exercises its discretion, the FDCA still requires FDA to set the effective date of an ANDA in light of the district court's judgment, as that is what the FDCA requires whenever a Paragraph IV certification has been "made."

## II.  Factual Background

### A.  Salix sues Norwich for making twenty-three Paragraph IV certifications.

Salix is the NDA holder for Xifaxan 550. JA__[[Dkt. 1 at PageID.10 (Compl. ¶ 39)]]. Xifaxan 550 is approved for two indications—for treatment of IBS-D and for the reduction in risk of overt HE in adults. *See id.* JA__[[Dkt. 1 at PageID.10 (Compl. ¶ 39)]].

In December 2019, Norwich filed ANDA 214369 seeking FDA's approval to market a generic version of Xifaxan 550 for both IBS-D and HE. *See id.* JA__[[Dkt. 1 at PageID. 13 (Compl. ¶ 44)]]. At that time, FDA's Orange Book listed twenty-three unexpired patents covering Xifaxan

550—some covering the polymorphic forms of the active ingredient rifaximin, some claiming use of the drug for the IBS-D indication, and some claiming use of the drug for the HE indication. *Id.* JA__[[Dkt. 1 at PageID. 14 (Compl. ¶ 46)]]. As part of its submission of ANDA 214369, Norwich had to take an official position on each of Salix's patents. Norwich made Paragraph IV certifications for every patent. *See* JA__[[Dkt. 1 at PageID. 13 (Compl. ¶ 44)]]; *see also* 35 U.S.C. § 271(e)(2)(A).

In March 2020, Salix sued Norwich for infringing all twenty-three patents, plus three more added in an amended complaint. The case was assigned to Judge Andrews of the District of Delaware. Salix's infringement suit triggered a 30-month stay, so FDA was unable to approve ANDA 214369 before at least August 2022.

## B.    Norwich goes all in on both indications—and loses.

Judge Andrews made clear that Salix could not proceed to trial on all the claims in all twenty-six patents. An early scheduling order instructed Salix to reduce the number of patents and claims. *See* Scheduling Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 23 ¶ 3(g)(iv) (D. Del. June 15, 2020). In complying with Judge Andrews' order—in making choices about discovery, stipulations, what evidence to present at trial, even how much trial time to spend on theories—Salix

relied on Norwich's assertions, manifested in the original ANDA 214369
and throughout the case, that it wanted FDA to approve its generic ver-
sion of Xifaxan 550 for *both* IBS-D *and* HE.

Salix and Norwich then jointly proposed trial on eight patents—three
polymorph patents, two IBS-D patents, and three HE patents. *See* Joint
Proposed Pretrial Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*,
No. 1:20-cv-00430, Dkt. No. 147 ¶ 6 (D. Del. February 28, 2022, 2022);
*see also* Joint Proposed Trial Order, *Salix Pharms, Ltd. v. Norwich
Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 153 ¶ 6 (D. Del. March 8,
2022). During the three-day trial in March 2022, Salix faced intense time
constraints. Salix devoted most of its limited courtroom time defending
the HE patents, little time on the IBS-D patents, and nearly no time at
all on one of the three polymorph patents (U.S. Patent No. 7,612,199).
*See* Stipulation and Proposed Order, *Salix Pharms, Ltd. v. Norwich
Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 180 (D. Del. May 12, 2022).

In mid-May 2022, after trial but before Judge Andrews' final decision,
Norwich and Salix prepared a joint stipulation addressing the nineteen
polymorph, IBS-D, and HE patents Salix was not able to litigate at trial.
The parties agreed that Judge Andrews should enter a judgment of non-
infringement as to those patents. *See id.* ¶¶ 1, 3. The parties expressly

limited the stipulation to Norwich's ANDA *containing both the IBS-D and HE indication*; the stipulation did not apply if Norwich *subsequently amended ANDA 214369 to change the indications of use. See id.* ¶ 1 n.1 ("For the sake of clarity, 'Norwich's current ANDA No. 214369' and 'current ANDA Product' as used in this Stipulation includes any amendments or supplements to the ANDA that do not change the indications of use . . . ."). Judge Andrews "so ordered" the stipulation. *See* Stipulation and Proposed Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 180 (D. Del. May 12, 2022).

Thus, with the court's imprimatur, Norwich sealed the bargain it had struck with Salix. Though Norwich did not irrevocably abandon its ability to amend ANDA 214369 to change the indications of use, Norwich stipulated that all findings of noninfringement as to the nineteen unlitigated patents were limited to the particular, unamended version of its ANDA. Norwich thus recognized Salix would suffer prejudice if, after all this time, Norwich amended ANDA 214369 to carve out either indication.

Two months later, on July 28, Judge Andrews orally announced that Norwich's ANDA 214369 infringed all seven patents litigated during trial. He also found that, of those seven patents, the HE patents were valid but the polymorph and IBS-D patents were not. He ordered the

parties to submit a proposed judgment reflecting those findings. *See* Oral Order, *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 189 (D. Del. July 28, 2022).

### C.  Judge Andrews rebuffs Norwich's gamesmanship.

The dust had settled, and all plainly saw that FDA could not approve ANDA 214369 until the valid and infringed HE patents expire—in October 2029. Immediately, Norwich launched a campaign to press Judge Andrews to let FDA fully approve ANDA 214369 after Norwich carved the HE indication out of the proposed generic label. The campaign failed.

#### 1. Judge Andrews rejects Norwich's narrow proposed judgment and blocks FDA from approving "ANDA No. 214369" until October 2029.

Norwich proposed a narrow judgment that would have allowed FDA to approve ANDA 214369 after a carveout amendment. *See Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 196 (D. Del. August 15, 2022). Norwich explained that its proposed judgment would

> restrict[] the effective date of approval of Norwich's ANDA only if the proposed labeling contains the HE indication … . This proposal would leave Norwich the option of seeking to amend its ANDA, which has not been tentatively approved, to

carve out the HE indication pursuant to 21 U.S.C.
§ 355(j)(2)(A)(viii).

*Id.* at 3.

Salix countered with a broad and categorical judgment—one that
"appl[ies] to 'Norwich's ANDA,' period," *id.* at 1—which Judge Andrews
adopted, *see* JA__[[AR 43–45, Memorandum, D. Del. Dkt. 192]]. The
judgment finds infringement of three HE patents for which Norwich
made Paragraph IV certifications. *See* JA__[[AR 41–42, Final Judgment,
D. Del. Dkt. 193 ¶¶ 2–3, PageID 13233–34]]. The judgment then sets the
effective date for Norwich's ANDA:

> Pursuant to 35 U.S.C. § 271(e)(4)(A), it is hereby ordered that
> the effective date of any final approval by the Food and Drug
> Administration ('FDA') of Norwich's ANDA No. 214369 is to
> be a date not earlier than the date of expiration of the last to
> expire of the '573, '195, and '397 Patents (currently October 2,
> 2029), plus any regulatory exclusivity to which Plaintiffs are
> or become entitled.

*Id.* ¶ 5, JA__[[AR 42, Final Judgment, D. Del. Dkt. 193, PageID 13234]].

Referencing Norwich's ANDA by its unique identifying number, the
judgment forbids FDA from fully approving "ANDA No. 214369" before
Salix's HE patents expire—regardless of any carveout amendments filed
between the judgment date (August 2022) and the patents' expiration
date (October 2029). Judge Andrews blocked "ANDA No. 214369"

because, with that ANDA, Norwich had taken its shot at Salix's patents and missed. To take another shot, Norwich needs to file another ANDA, which would qualify as a new act of infringement, and Salix, in turn, could bring a new infringement action to adjudicate patents that, owing to Norwich's litigation strategy, were not litigated in the first proceedings.

### 2. Norwich argues that its carveout amendment satisfies the original judgment.

Filing a new ANDA did not suit Norwich. On September 6, 2022, Norwich amended ANDA 214369, submitting a revised generic label that purportedly excludes the HE indication. JA__[[AR 54–56, Sept. 6 Letter re. Competitive Generic Therapy Designation Granted, Priority Review Requested, Patent and Labeling Amendment]]. One day later, Norwich filed a motion to modify the judgment under Rule 60(b)(5) and (6). *See* JA__[[AR 363–364, Mot. to Modify J., D. Del. Dkt. No. 205]].

From beginning to end, the motion's premise was that Judge Andrews' judgment *unequivocally* and *unconditionally* precludes FDA from fully approving Norwich's ANDA 214369 until October 2029, *notwithstanding any carveout amendments. See, e.g.*, JA__[[AR 271, Mot. to Modify J. at 3, D. Del. Dkt No. 211]]. ("Continuing to order FDA to delay

the approval of Norwich's Amended ANDA for the IBS-D Indication frustrates Congressional purpose."); *id.* at JA__[[AR 271, Mot. to Modify at 17, D. Del. Dkt. 211]] ("Yet, in this case, FDA approval is a gate for marketing Norwich's ANDA Product for the IBS-D Indication, and *the current Judgment blocks that approval until October 2029.*") (emphasis added). Norwich contended that its carveout amendment satisfied the judgment and, as such, warranted narrowing the judgment so that FDA could now approve ANDA 214369. *Id.* at JA__[[AR 274, Mot. to Modify at 6, D. Del. Dkt. 211]] ("By removing the HE Indication from the proposed ANDA labeling, Norwich's Amended ANDA *satisfies the judgment* on the Asserted HE Patents, and ordering FDA to delay the effective date of approval of Norwich's ANDA Product for the IBS-D Indication *is no longer equitable.*") (emphases added). Norwich thus asked Judge Andrews to "*remove the absolute prohibition* on FDA's approval of Norwich's *Amended* ANDA before October 2, 2029." *Id.* at JA__[[AR 274, Mot. to Modify at 6, D. Del. Dkt. 211]] (emphases added).

### 3. Judge Andrews rejects Norwich's motion to amend the judgment.

Judge Andrews denied Norwich's motion in May 2023. *See* JA__[[AR 358–362, Memorandum Order, D. Del. Dkt. No. 222]]. He did not quarrel

with the starting point of Norwich's motion—that his judgment was an absolute prohibition on FDA's approval of NDA No. 214369. That judgment was the product of Norwich's decision not to carve out the HE indication before trial. Norwich "made various strategic choices along the way, but now does not want to live with the consequences of those choices." *Id.* at JA_[[AR 360, Memorandum Order, D. Del. Dkt. 222 at 3]]. The carveout amendment—a "voluntary decision of the trial loser to change course"—fell short of Rule 60(b)'s standards. *Id.* "[I]t just seems wrong to me that Defendant can litigate a case through trial and final judgment based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win in a summary proceeding." *Id.* at JA__[[AR 362, Memorandum Order, D. Del. Dkt. 222 at 5]].

Judge Andrews also rejected Norwich's unproven assertion that the amendment "successfully carved out language from a label to turn infringement into non-infringement." *Id.* at JA__[[AR361, Memorandum Order, D. Del. Dkt. 222 at 4]]. Norwich needed more than its own say-so to prove that. Yet Norwich submitted no evidence about the amended application, and Judge Andrews refused to transform Norwich's post-judgment motion into what would "essentially be a second litigation." *Id.*

Accordingly, Judge Andrews left in place the original judgment—a judgment finding infringement and setting October 2029 as the soonest date when FDA can approve ANDA 214369. That judgment remains in place today.

### D. The Federal Circuit affirms across the board, and the Supreme Court denies review.

Without contesting infringement of the HE patents, Norwich appealed only the scope of the original judgment and the denial of its Rule 60(b) motion to modify the judgment. Its arguments to the Federal Circuit should sound familiar. Norwich contended that, by law, Judge Andrews had to enter a judgment that applied only to ANDA 214369 *as it existed during trial* (and thus that would not block FDA approval of an amended ANDA). *See, e.g.*, Principal and Response Brief For Defendant Cross-Appellant, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir.) ECF 38 at 18 ("[T]he court had to specify [in the judgment] that the approval date pertains to Norwich's ANDA seeking approval for the infringing HE Indication."). Norwich even argued that Judge Andrews' broad judgment violates the FDCA. *See id.* at 20–21.

To inject urgency into the appeal, Norwich noted that FDA had withheld full approval of Norwich's amended ANDA because of Judge

Andrews' judgment. *See, e.g.*, *id.* at 6, 25. At oral argument, Norwich's counsel admitted that the judgment "blocked FDA from approving Norwich's amended ANDA[.]" Oral Argument at 19:32–36, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir.).[3] Norwich did not fault FDA for misinterpreting the judgment; it faulted Judge Andrews for entering it—he "simply used the ANDA number," which "gave it [*i.e.*, the judgment] a much broader scope." *Id.* at 20:51–58.

The Court of Appeals unanimously rejected Norwich's arguments and affirmed. *See Salix Pharms., Ltd. v. Norwich Pharms. Inc*, 98 F.4th 1056, 1067–1069 (Fed. Cir. 2024).[4] Key takeaways include the following:

- The Court of Appeals *agreed* with Norwich and Salix that, "Although only the HE indication was found to infringe a valid patent, the order restricted final approval of the entire ANDA, including the non-infringing indication, until 2029." *Id.* at 1068.

- As to the scope of the judgment, the Court of Appeals *rejected* Norwich's contention that Judge Andrews had to tailor it to the HE

---

3 Available at https://www.cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/

4 The panel split 2–1 on Salix's cross-appeal. *See Salix*, 98 F.4th at 1070 (Cunningham, J., dissenting in part) ("I join most of the majority's opinion, but I respectfully dissent from the majority's opinion concerning" the validity of Salix's IBS-D patents).

indication. *See id.* ("The statutory scheme makes clear that it is not the potential use of Norwich's rifaximin for HE that constitutes the relevant infringement here, nor is it the unpatented drug compound itself, but *rather it is the submission of the ANDA that included an infringing use.* … That the ANDA further recited a non-patent-protected indication does not negate the infringement resulting from the ANDA's submission.") (emphasis added) (citation omitted).

- As to the Rule 60(b) order, the Court of Appeals held that Judge Andrews had "the discretion, not the obligation" to revisit his infringement findings after Norwich's carveout amendment. *Id.* at 1069. Crediting Judge Andrews' observation that he would need a "second litigation" to decide whether the carveout amendment "successfully … turn[ed] infringement into non-infringement," the court upheld his "reasonabl[e]" determination "that consideration of the amended ANDA would be inequitable and inappropriate." *Id.*

- The Court of Appeals confirmed that, while the judgment blocks FDA from approving ANDA 214369 until 2029 no matter how Norwich may amend it, it does not "prevent approval of a *new* non-infringing ANDA," if Norwich chooses to submit a new ANDA. *Id.* at 1068 (emphasis added).

Norwich unsuccessfully sought rehearing en banc and Supreme Court review. The starting point for both of Norwich's applications for discretionary review was that Judge Andrews acted unlawfully by ordering FDA not to approve ANDA 214369 before October 2029 even if Norwich amended that ANDA to remove the HE indication. *See, e.g.*, Norwich's Rehearing Petition, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir. May 13, 2024) ECF 74 at 1 (arguing that the panel opinion "require[s] courts to issue injunctions on ANDA approvals that, on the facts present here, are far broader in scope than the underlying infringement"); *id.* at 2 (complaining that "an adverse infringement finding on any one indication is a death knell for the entire ANDA"); *id.* at 15 ("[A]pproval of Norwich's Amended ANDA is delayed by a 271(e) order that is based on infringement of a patent for which the ANDA does not have a Paragraph IV certification and that covers an indication for which the ANDA does not seek approval."); Petition for Writ of Certiorari, *Norwich Pharmaceuticals Inc., v. Salix Pharmaceuticals, Ltd., et al.* (S. Ct.) No. 24-294 Dkt. 1 at 14 (arguing that Judge Andrews "issu[ed] an order that put a blanket ban of approval on 'ANDA No. 214369' irrespective of whether it seeks approval for any patented indication"); *id.* at 15 ("[I]nfringing ANDAs cannot be amended post-judgment to exclude

indications covered by valid patents."). Both the Federal Circuit and the Supreme Court summarily denied Norwich's petitions without a response.

### E.    FDA tentatively approves Norwich's amended ANDA.

In June 2023, after Norwich submitted its carveout amendment, FDA tentatively approved ANDA 214369. JA__[[AR 365-370, ANDA Tentative Approval complete letter]]. In its tentative approval letter, FDA acknowledged Norwich's carveout amendment and section viii statements. JA__[[AR 367, ANDA Tentative Approval letter]]. Nonetheless, FDA looked to Judge Andrews' judgment, which FDA quoted, as well as his denial of Norwich's Rule 60(b)(5) motion, and concluded that "final approval cannot be granted until October 2, 2029 as specified in the court order." JA__[[AR 367, ANDA Tentative Approval letter]].

FDA did exactly what Norwich, Salix, Judge Andrews, and the Federal Circuit all said FDA was required to do: it issued a tentative approval because Judge Andrews' judgment is an "absolute prohibition" and "blanket ban of approval" of ANDA 214369, notwithstanding Norwich's belated carveout amendment.

F.   In a last-ditch effort, Norwich sues FDA in D.D.C. for following Judge Andrews' judgment.

Just four days after FDA tentatively approved the ANDA, Norwich brought this APA action, claiming that the tentative approval was arbitrary, capricious, and unlawful and that FDA was required to approve the ANDA. The case was assigned to Judge Moss.

Norwich's legal theories in this case have bounced around. Norwich first focused on FDA's regulations, which Norwich incorrectly framed as obligating the agency to issue full approval once Norwich submitted its carveout amendment. *See, e.g.*, JA__[[Dkt 1 at PageID 19, Paragraph 69]] ("The regulation is unambiguous, and it was thus improper for FDA to refuse to grant final approval to Norwich's Amended ANDA based on the district court's order relating to the HE Patents."); JA__[[Dkt 4-1 at PageID. 27]] ("FDA's refusal to grant Norwich final approval subverts its own regulations[.]"). Yet, after Salix, FDA, and Judge Moss pressed Norwich to account for Judge Andrews' judgment, Norwich rightly conceded that administrative regulations cannot empower FDA to disobey a court order, let alone justify the agency's disobedience. *See* JA__[[Dkt. 70, Tr. 9:8–10:10, PageID. 9]] So, Norwich pivoted away from FDA's regulations and toward Judge Andrews' judgment itself: "[I]t comes down to what does the 271(e) order mean? FDA is bound to follow it[.]" JA__[[Dkt. 70,

15:9–10, PageID. 15]]; *see* JA__[[Dkt. 67 PageID 22]] ("As clarified beyond any doubt at oral argument, Norwich … is merely challenging the FDA's reading of the final judgment entered by the Delaware District Court."); *see also* JA__[[*id.* at PageID 29]] ("Norwich's concession … that this case does not challenge the lawfulness of the Delaware District Court's final judgment" was "necessary to avoid interjecting this Court in a matter appropriately left to the Federal Circuit").

One might expect that Norwich, after characterizing Judge Andrews' judgment as an "absolute prohibition" and "blanket ban of approval" of ANDA 214369, would have maintained a consistent position in these APA proceedings. Alas, one would be wrong. In the District of Columbia, Norwich maintains a position opposite to the position it maintained in Delaware. Norwich incredibly told Judge Moss that Judge Andrews "did *not* consider its Section 271(e)(4)(A) Order to apply to any amended ANDA without the HE Indication." JA__[[Dkt. 43-1 at 5.]]

Judge Moss saw through Norwich's charade. *See* JA__[[Dkt. 67 at PageID 21]] ("[T]here is a noticeable tension between Norwich's argument before the Federal Circuit that the Delaware District Court's judgment sweeps too broadly and its contention here that the FDA erred in reading the final judgment more broadly than warranted."). Accepting

that the APA provides a cause of action for ANDA applicants who object to FDA's interpretation of a court order, JA__[[*see id.* at PageID 22–26]], Judge Moss held that "FDA's reading of the Delaware District Court's final judgment was not only reasonable but was by far the better reading," JA__[[*id.* at PageID 28]].

- Judge Moss "start[ed] with the plain text" of the judgment: because "Norwich's ANDA, even as amended, is still ANDA No. 214369," FDA's determination to issue tentative approval "tracks the most straightforward reading of the final judgment." JA__[[*Id.* at PageID 30]].

- "That plain-language reading" was "reinforced, moreover, by the extensive briefing and argument that came before and after its entry." JA__[[*Id.*]]. Judge Moss recited the parties' dispute over how to write up Judge Andrews' oral rulings, as well as Norwich's ill-fated motion to modify the judgment. JA__[[*See id.* at PageID 30–32]]. "Given this history, it is a stretch for Norwich to argue that the final judgment is best read *implicitly* to include qualifying language that the court *explicitly* declined to include—twice." JA__[[*Id.* at PageID 32]].

- Turning to Norwich's argument that Judge Andrews' judgment causes FDA to violate its own regulations, Judge Moss was "unpersuaded" that the regulations were "as clear" as Norwich claims—"so clear that

the FDA should have stretched to read the Delaware District Court's final judgment and Rule 60(b) decision in a manner that ignores their plain terms." JA__[[*Id.* at PageID 34, 38]]. Questions concerning how district courts should handle post-trial carveout amendments "are not before this Court, and they are the sole domain of the Federal Circuit." JA__[[*Id.* at PageID 37]].

# SUMMARY OF ARGUMENT

Norwich's appeal rests on two premises. First, Norwich presumes that FDA must immediately approve an ANDA whenever the applicant submits a post-judgment carveout amendment and tells the agency, *ipse dixit*, that the ANDA will no longer infringe patents that a federal court found the ANDA will infringe. *See* AOB 33–40. At the same time, Norwich recognizes that FDA cannot violate court orders and so cannot approve an ANDA when a federal judgment bars FDA from approving the ANDA. *See* AOB 41. So, second, Norwich presumes that Judge Andrews did not absolutely prohibit FDA from approving ANDA 214369 before October 2029. *See* AOB 40–53.

Norwich's appeal fails if either premise fails. And, in fact, both fail.

Once a patentee sues an ANDA applicant who has made a Paragraph IV certification, FDA cannot immediately approve the ANDA unless and until the applicant wins a noninfringement finding (not later than 30 months after the paragraph iv notice). A carveout amendment does not unmake Paragraph IV certifications, and it is not equivalent to a judicial finding of noninfringement. A carveout amendment only indirectly influences the applicant's likelihood of winning a noninfringement finding. A carveout amendment submitted *before trial* increases the likelihood the

applicant will win a noninfringement finding, but a carveout amendment submitted *after an infringement finding* comes too late. Unless the district court exercises discretion to reconsider the judgment and converts the infringement finding into a noninfringement finding, FDA remains statutorily bound to set the ANDA's effective date as the date written into the judgment, notwithstanding the post-judgment carveout amendment.

Here, the process played out as the FDCA requires. Norwich voluntarily made Paragraph IV certifications for twenty-three patents and, before losing, repulsed every opportunity to carve out the HE indication from its proposed generic label. Judge Andrews' judgment, now affirmed by the Federal Circuit, directs FDA not to fully approve "ANDA No. 214369" before October 2029. Judge Andrews' discretionary refusal to modify that judgment, also now affirmed by the Federal Circuit, leaves Norwich with the same fallback that is available to every manufacturer who wants to test whether an ANDA for an IBS-D-only generic version of Xifaxan 550 infringes Salix's patents—file a new ANDA.

Norwich's central assertion in this case—that Judge Andrews' judgment does not stop FDA from fully approving ANDA 214369 after Norwich's carveout amendment—is delusional. Norwich ignores both the

text of the FDCA and the text of the judgment. Norwich ignores Judge Andrews' rejection of its proposed judgment and distorts his rejection of its motion to modify the judgment. Most gallingly, Norwich contradicts its own statements to Judge Andrews, the Federal Circuit, and the Supreme Court—in which Norwich decried the judgment as an "absolute prohibition" and "blanket ban of approval" that prevents FDA from approving ANDA 214369 *even if Norwich amends it*. The Court should not tolerate an ANDA applicant's claim that FDA acted contrary to law for doing the very thing the applicant told three federal courts the agency was required by law to do.

Norwich's gamesmanship is a blatant effort to deny Salix's patent rights. Norwich's post-trial amendment may not be sufficient to avoid infringement of Salix's HE patents. No court has considered whether an ANDA for an IBS-D-only generic version of Xifaxan 550 infringes Salix's patents. Norwich simply takes that for granted: it insisted to FDA and repeats to this Court that, after its carveout amendment, "there [is] no patent-based obstacle to immediate approval." AOB 4. FDA cannot evaluate, let alone accept, Norwich's self-serving assurances about the effect of a carveout amendment. *See* AOB 33 ("Congress did not task FDA with reviewing patent judgments in the abstract… ."). Neither can this Court.

Norwich deleted the HE indication from its proposed generic label—yet that deletion alone says nothing about whether the resulting ANDA for a purportedly IBS-D-only generic version of Xifaxan 550 infringes Salix's patents. Remember, not all of Salix's patents were litigated at trial; Salix stipulated to findings of noninfringement of unlitigated patents *limited to the original unamended version of its ANDA*. Those concerns led Judge Andrews to deny Norwich's motion to modify the judgment, and they should lead this Court to affirm the judgment below.

# ARGUMENT

## I. FDA's tentative approval of ANDA 214369 was neither arbitrary, capricious, nor contrary to law.

Judge Moss upheld FDA's tentative approval of ANDA 214369 as faithfully implementing Judge Andrews' judgment. Norwich contends that the FDCA and FDA's regulations required FDA to fully approve ANDA 214369 after Norwich's post-judgment carveout amendment, and that FDA should have warped its interpretation of Judge Andrews' judgment to avoid a conflict between his ruling and Norwich's interpretation of food-and-drug law. Both halves of Norwich's appeal are wrong as a matter of law, and this Court can affirm on either ground.

### A. FDA cannot fully and immediately approve Norwich's ANDA without a noninfringement finding.

#### 1. After an applicant makes a Paragraph IV certification, FDA must set the ANDA's effective date in accordance with the date of a noninfringement finding or the date written in an infringement finding.

Norwich acknowledges the centrality of the FDCA for determining the effective date its ANDA. *See* AOB 13–17, 33–38. "[W]hen an ANDA contains patent certifications, the statute's timing rules determine the permissible effective date of any approval." AOB 13. Norwich also

acknowledges that, when an ANDA applicant "makes a Paragraph IV certification" and then loses the ensuing infringement litigation, FDA must not make the ANDA effective before the date written in the judgment. AOB 35 (citing 21 U.S.C. § 355(j)(5)(B)(iii)(II)).

Norwich disputes that these timing rules confirm the lawfulness of FDA's tentative approval of ANDA 214369 because, in between losing the patent litigation and FDA's tentative approval, Norwich amended its ANDA to purportedly delete the HE indication from the proposed generic label. In Norwich's view, because of its belated carveout amendment, its Paragraph IV certifications for Salix's HE patents are "no longer part" of ANDA 214369. AOB 37; *see* AOB 8 ("[N]o longer contained the HE patent certifications[.]"); AOB 40 ("[T]he infringing use addressed in that judgment was no longer in the amended ANDA and its patent certifications."); *see also* AOB 30 (asserting that ANDA 214369 "lacks any certification to the HE patents"). Norwich concludes: since its original Paragraph IV certifications are amended, FDA must not set ANDA 214369's effective date in accordance with the adverse judgment those certifications precipitated.

Norwich is wrong. The timing rules are not so manipulable. The FDCA specifically links an ANDA's effective date "to each certification

*made* under paragraph (2)(A)(vii)." 21 U.S.C. § 355(j)(5)(B) (emphasis added). Here, the word "made," used as a past participle, refers to a discrete, past action—a certification made "under paragraph (2)(A)(vii)."

The timing rule for Paragraph IV certifications says the same thing. FDA has essentially two options for the effective date "[i]f the applicant *made* a certification described in subclause (IV) of paragraph (2)(A)(vii) [*i.e.*, a Paragraph IV certification]." 21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added). Here, the word "made" is used as a past-tense verb and refers to the same discrete, past action as the overarching statutory text—the Paragraph IV certification.

Norwich ignores the statutory text and treats the timing rules as if they depend, not on the certifications or statements an applicant made, but on the certifications or statements the applicant still stands behind on the date its ANDA is approved. *See, e.g.*, AOB 33–34 ("[A]pproval based on the patent certifications made in the ANDA before it[.]"); AOB 35 ("'[E]ach certification made' by Norwich in its operative ANDA.") (citation omitted); AOB 36 ("FDA needed to run through the four statutory timing rules as to *each patent certification* in Norwich's then-operative *amended* '369 ANDA."); AOB 37 ("'[E]ach certification made under paragraph (2)(A)(vii)' in the amended ANDA before it") (citation omitted). But

the FDCA twice uses the word "made" in a retrospective sense. Making a Paragraph IV certification is not a continuous action; it is discrete event with lasting significance. No wonder, then, that Congress called them "certifications" (a solemn act) and demanded they be made "in the opinion of the applicant and to the best of [] knowledge." 21 U.S.C. § 355(j)(2)(vii). *Accord Black's Law Dictionary* (12th ed. 2024) (defining "certification" as "[t]he act of attesting; esp., the process of giving someone or something an official document stating that a specified standard or qualification has been met").

That makes sense given the cascade of events triggered by making a Paragraph IV certification. If the patentholder responds by bringing timely infringement litigation, FDA cannot approve the ANDA for thirty months and ultimately must set the ANDA's effective date in accordance with a court order—as either the date of a noninfringement finding or the date written into an infringement finding. *See* 21 U.S.C. § 355(j)(5)(B)(iii)(I)–(II). Even if the parties privately settle the infringement dispute, the ANDA can be fully approved on the date a court so orders the settlement or consent decree. *See id.* § 355(j)(5)(B)(iii)(I)(bb), (II)(aa)(BB). The ANDA applicant may later carve out an indication for which it made Paragraph IV certifications, but a carveout amendment is

not one of the events the FDCA links with the effective date of an ANDA, and the date of a carveout amendment is not one of the dates on which FDA may fully approve an ANDA. A carveout amendment can only *indirectly* influence the effective date—insofar as it helps the applicant win a noninfringement finding. *See id.* §§ 355(j)(5)(B)(iii)(I)(aa), (II)(aa).

> ### 2. FDA regulations don't permit applicants to remove Paragraph IV certifications made in their original applications.

FDA's regulations here work hand-in-glove with the FDCA; they confirm that, once a Paragraph IV certification is "made," it cannot be unmade by a carveout amendment. Under FDA's Amendment Regulation, an applicant can "withdraw" a certification only in a unique situation— when the applicant erroneously makes a certification for a late-listed patent. 21 C.F.R. § 314.94(a)(12)(viii). After a carveout amendment, an ANDA still contains the original Paragraph IV certification but "will no longer be *considered* to contain" it. 21 C.F.R. § 314.94(a)(12)(viii) (emphasis added). A carveout amendment does not, as Norwich claims, "remove" the certification from the ANDA entirely. AOB 39.

Norwich reasons that, since an ANDA "will no longer be considered to contain" a Paragraph IV certification after a carveout amendment (AOB 39) (citation omitted), FDA should ignore that certification when

applying its Timing Regulation (AOB 40). The Timing Regulation, how-ever, says otherwise. It states that FDA can "immediately" approve an ANDA if the applicant "submits" a section viii statement for a patent (as carveout amendments do), "except that if the applicant also submits a paragraph IV certification to the patent, then the … ANDA may be ap-proved" under the rules for Paragraph IV certifications. 21 C.F.R. § 314.107(b)(1)(ii). So, when an ANDA applicant submits a Paragraph IV certification for a patent, even if the applicant later submits a section viii statement for the same patent, the Timing Regulation specifies that the timing rules for Paragraph IV certifications still apply. Like the FDCA, the Timing Regulation ascribes lasting significance to a discrete histori-cal event—making a Paragraph IV certification—which a subsequent carveout amendment does not undo.[5]

---

[5] An example in the regulatory preamble to rulemaking implement-ing the 2003 amendments to the FDCA confirms that carveout amendments do not automatically pretermit the statutory timing rules. "It should be noted that if the paragraph IV certification that gave rise to the 30-month stay … is subsequently amended to a statement under § 314.50(i)(1)(iii) or § 314.94(a)(12)(iii) with re-spect to one or more methods of use, the 30-month stay … will not be terminated in the absence of a qualifying event under § 314.107(b)(3)." Abbreviated New Drug Applications & 505(b)(2) Applications, 80 Fed. Reg. 6802, 6862 (Feb. 6, 2015). A carveout

(footnote continued on next page)

Norwich spotlights FDA's comment in the Tentative Approval that ANDA 214369 "contains" (in the present tense) section viii statements for Salix's HE patents. *See* AOB 36, 40. But Norwich's belated section viii statements for the HE patents do not change that Norwich originally submitted Paragraph IV certifications for those patents. The Timing Regulation directs FDA to use the timing rules for the Paragraph IV certifications, not the section viii statements—exactly what FDA did.

The regulatory requirement that ANDA applicants, after losing an infringement case, submit either a Paragraph III certification or a section viii statement does not support Norwich's assertion that its carveout amendment removed the Paragraph IV certifications from its ANDA. *See* AOB 39 (discussing and quoting 21 C.F.R. § 314.94(a)(12)(viii)). The filing requirement simply ensures that an ANDA memorializes the applicant's litigation loss. It does not alter the impact of the judgment on the date that the ANDA may be approved.

Norwich's interpretation of the regulations, as empowering FDA to rule that a court order no longer applies, raises serious constitutional

---

amendment does not end a 30-month stay for the same reason a carveout amendment does not require FDA to immediately approve an ANDA: carveout amendments are not among the statutorily listed events that control the effective date of an ANDA.

questions. Consistent with Article III, federal "[j]udgments … may not lawfully be revised, overturned or refused faith and credit by another Department of Government." *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–114 (1948) (citing *Hayburn's Case,* 2 U.S. 408 (1792)). "It has also been the firm and unvarying practice of Constitutional Courts to render no judgments … that are subject to later review or alteration by administrative action." *Id.* If regulations actually purported to empower FDA to disregard a federal judgment setting an ANDA's effective date based on the agency's independent finding that the facts have materially changed, Norwich would have to explain why that regulatory power doesn't collide with the constitutional prohibition on administrative "review or alteration" of federal judgments. Only *courts* can determine whether a factual or legal change requires changing a judgment. *See Agostini v. Felton*, 521 U.S. 203, 215 (1997). No doubt, Norwich maintains that determining whether a judgment *applies* is different than *reviewing or altering* the judgment. That's no answer to the constitutional question because drawing a line between those two is the constitutional question. The Court can and should avoid that question by rejecting Norwich's aggressive reading of the regulations. *See Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013).

B.    As Norwich itself argued, Judge Andrews' judgment blocks FDA from approving "ANDA No. 214369" regardless of the carveout amendment.

FDA set October 2029 as the effective date for ANDA 214369 because FDA correctly determined that it was bound to follow Judge Andrews' judgment finding infringement and setting October 2029 as the effective date for ANDA 214369. JA__[[AR 367, ANDA Tentative Approval letter]]. Long ago, Norwich conceded that "FDA is bound to follow" court orders. JA__[[Dkt. 70 at 15:9–10, PageID. 15]]. Judge Moss accepted that concession, JA__[[Dkt. 67 at PageID 38–39]], and Norwich echoes it on appeal, *e.g.*, AOB 41. That concession controls this case. "An agency acting on the express instructions of a federal court simply cannot be deemed to have violated the APA; at the very least, the agency cannot be deemed to have acted in an arbitrary or capricious manner." *Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021, 1026 (D.D.C. 1989); *see Am. Fed. of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1157 (D.C. Cir. 1981) ("[C]omply[ing] with the court order did not violate" the APA).

To escape the case-ending implications of its concession, Norwich contends that FDA "simply misread[] the Delaware court's judgment." AOB 40. Norwich theorizes Judge Andrews agreed with Norwich's interpretation of the FDCA and FDA's regulations (AOB 40), limited his "judgment

to the pre-amendment ANDA" so as not to "violate[] the statutory and regulatory requirements" (AOB 40–41), and "did not even purport to delay approval of the (then-non-existent) amended ANDA" (AOB 48).

Norwich's theory is demonstrably false. The text of Judge Andrews' order and its context disprove it. Not only that, but Norwich itself already litigated—and lost—its challenges to the meaning, scope, and effect of the Judge Andrews' order in the District of Delaware, in the Federal Circuit, and in the Supreme Court. The theory Norwich peddles in this Court directly contradicts what it said to those courts.

### 1. The text of the order

The order states that FDA cannot approve "ANDA No. 214369" before October 2029. *See* JA__[[AR 41–42, Final Judgment, D. Del. Dkt. 193 ¶5, PageID 13233–34]]. Number "214369" is the unique, official designation for Norwich's ANDA. When Norwich submitted its carveout amendment, its ANDA number was 214369. When FDA tentatively approved the amended ANDA, its number was still 214369. *See* JA__[[AR 365, ANDA Tentative Approval letter]]. Because the ANDA's official, numerical designation has never changed, Judge Andrews' order prohibits FDA from approving that ANDA before October 2029. It is that simple. *See* AOB 44

("Yes, the Delaware court did refer to delaying 'ANDA No. 214369' until the expiration of the HE patents in 2029.").

Of course, Norwich tries to complicate it. Norwich proposes that Judge Andrews used the phrase "ANDA No. 214369" as code or shorthand for "the ANDA that was operative, considered, and ruled upon by the Delaware court, not a hypothetical amended ANDA." AOB 33. Norwich downplays the order's use of the ANDA's official designation because Norwich claims that Judge Andrew "meant to decide" the effective date only for the pre-amendment ANDA. AOB 45.

Balderdash. Judge Andrews meant what he wrote and wrote what he meant. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Had he meant to refer to the ANDA as it then looked, he could have inserted a clear limitation, like the word "now," somewhere in the order. *See Carcieri v. Salazar*, 555 U.S. 379, 388–390 (2009).

When a statute or order refers to something or someone by name or number, it functions on the level of *form*, not *substance*. Treaties with the "United States" didn't end when Alaska and Hawaii were admitted to the union. Corporations can't avoid liability for unpaid taxes by spinning off subsidiaries. And the effective date Judge Andrews set for "ANDA No. 214369" isn't mooted by an amendment to ANDA 214369, whether

the amendment changes a just few words or carves out an entire indication. Norwich's contention that ANDA 214369 ceased to be "ANDA No. 214369" after the carveout amendment is a sleight of hand: Norwich is trying to shift focus to the *substance* of its ANDA, but Judge Andrews' order focuses on the *form*.[6]

### 2. Context

The buildup to the order and its aftermath reinforce its plain meaning. Yet in this Court, Norwich systemically mischaracterizes every step of the infringement litigation as supporting Norwich's current position

---

[6] Norwich's thesis about the transformative power of amendments leads quickly to absurd results. Echoing the Ship of Theseus thought experience, even an insignificant amendment would so change an ANDA as to moot a court order setting its effective date. *Cf.* Plutarch, Life of Theseus 23.1 (Loeb Classical Library ed. 1914) ("The ship on which Theseus sailed … was preserved by the Athenians … . They took away the old timbers from time to time, and put new and sound ones in their places, so that the vessel became a standing illustration for the philosophers in the mooted question of growth, some declaring that it remained the same, others that it was not the same vessel."). This isn't a fanciful concern. FDA requires ANDA applicants to submit an amendment to request full approval of a tentatively approved ANDA. *See* Tentatively Approved ANDA Guidance. If Norwich were right, a request for immediate approval would itself require immediate approval, and the whole process would be reduced to sport.

that Judge Andrews' judgment does not block FDA from approving ANDA 214369 after Norwich amended it.

In this Court, Norwich imagines that Judge Andrews originally adopted its narrow proposed judgment. *See* AOB 5 (asserting that the original "judgment delayed approval of *only* the then-operative, original ANDA containing the HE Indication and certifications to the HE patents, not any subsequent *amended* ANDA lacking the HE Indication and HE patent certifications" (citation modified)); *see also* AOB 41 ("[T]he Delaware court limited its judgment to only the then-operative, pre-amendment '369 ANDA containing the HE patent certifications."). In reality, Judge Andrews rejected Norwich's narrow proposed judgment, which explicitly would have left "Norwich the option of seeking to amend its ANDA … to carve out the HE indication." *Salix Pharms, Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430, Dkt. No. 196 (D. Del. August 15, 2022) at 1; *see* pp. 21–23, *supra.* Judge Andrews adopted the broad judgment Salix drafted.

In this Court, Norwich imagines its post-trial motion as a motion to clarify the judgment to stop Salix from "mak[ing] mischief" (AOB 45, 48) by "mak[ing] explicit that the judgment did not preclude FDA from approving Norwich's amended '369 ANDA" (AOB 22). In reality, Norwich's

motion invoked Rule 60(b)(5), "a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation modified). Arguing that its carveout amendment materially changed the facts sustaining the original judgment, Norwich sought a *new* judgment to "*remove* the absolute prohibition on FDA's approval of Norwich's Amended ANDA before October 2, 2029." JA__[[AR 274, Mot. to Modify, D. Del. Dkt. No. 211 at 6]] (emphasis added). Judge Andrews denied Norwich's motion as an improper "way around the final judgment," [[AR 361.]], thus leaving the absolute prohibition in place.

In this Court, Norwich imagines that "the Federal Circuit read the Delaware court's judgment" narrowly—in the same way that Norwich now reads it. AOB 45. In reality, the Federal Circuit recognized that the judgment blocks FDA from approving ANDA 214369 regardless of any carveout amendments and that, after finding infringement, whether to narrow the judgment based on a carveout amendment "is within the discretion of the district court, guided by principles of fairness and prejudice to the patentholder." *Salix*, 98 F.4th at 1069 (quoting *Ferring*, 764 F.3d

at 1391). On that basis, the Federal Circuit affirmed the entry of the original judgment and the denial of Norwich's Rule 60(b) motion.

Norwich's retelling of the infringement litigation doesn't pass the smell test. Does Norwich seriously think anyone will believe that Norwich (1) opposed Salix's broad proposed judgment, (2) moved to modify the judgment, (3) appealed both its losses to the Federal Circuit, (4) sought rehearing *en banc*, and (5) even petitioned for certiorari—all because Judge Andrews had *agreed* with Norwich's (current) interpretation of the judgment from the beginning? Not even Norwich believes that tall tale. After telling Judge Andrews that his judgment operates as an "absolute prohibition on FDA's approval of Norwich's Amended ANDA," JA__[[AR 274, Mot. to Modify, D. Del. Dkt. 211 at 6]], Norwich pleaded for appellate reversal on the ground that the judgment "block[s] FDA from approving Norwich's amended ANDA." Oral Argument at 19:32–36, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir.), https://www.cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/. Norwich told the *en banc* Federal Circuit that the panel "decision leaves in place a 271(e) orde[r] with a broader injunctive scope than the underlying infringement." Norwich's Rehearing Petition, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 22-2153 (Fed. Cir. May 13, 2024) ECF

74 at 7. And Norwich told the Supreme Court that "the district court's 271(e) order has denied FDA the ability to follow its own regulation and approve the amended ANDA." Petition for Writ of Certiorari, *Norwich Pharmaceuticals Inc., v. Salix Pharmaceuticals, Ltd., et al.* (S. Ct.) No. 24-294 Dkt. 1 at 17.

Throughout the infringement proceedings, Norwich conceded that the original judgment blocks approval of the amended ANDA and begged for the judgment to be narrowed because Norwich believed that it is unlawful and unfair to block the amended ANDA after Norwich purportedly carved out the infringing HE indication after trial. The thing is, merely carving out the HE indication does not establish that the resulting ANDA for an IBS-D-only generic version of Xifaxan 550 infringes none of Salix's patents. Recall, most Salix's patents were not litigated at trial. *See* pp. 19–21, *supra.* The parties stipulated to findings of noninfringement of those patents only insofar as Norwich did not amend its ANDA to change the indications. By its terms, the stipulation lacks force now that Norwich has it amended its ANDA. Norwich's assertion that its carveout establishes noninfringement of Salix's HE patents is pure *ipse dixit.* Because Norwich failed to substantiate the premise of its post-trial motions and appellate briefs—*i.e.*, that the amended ANDA 214369 does not

infringe any of Salix's patents—Judge Andrews retained the absolute prohibition on FDA approving the ANDA, amended or not.

Throughout these proceedings, Norwich emphasizes Judge Andrews' refusal to find that the amended ANDA does not infringe any of Salix's patents. *See* AOB 6, 21, 43, 45 (quoting Judge Andrews' statement, "I cannot rule on facts not before me"). On Norwich's view, his rejection of Norwich's unsubstantiated assertions somehow confirms FDA's power to approve the amended ANDA.

Norwich is wrong. Indeed, Norwich is making a basic logic error: the category of <ANDAs that FDA may approve immediately> is not coextensive with the category of <ANDAs that have not been found to infringe>. Judge Andrews may not have found that an ANDA for an IBS-D-only generic version of Xifaxan 550 infringes Salix's patents. But for ANDA 214369 to be immediately approvable, Norwich needs more than the *absence* of an infringement finding—it needs the presence of a *non*infringement finding. For, after an ANDA applicant makes a Paragraph IV certification, FDA can approve the ANDA immediately only if the applicant obtains a noninfringement finding, *see* pp. 39–43, *supra*, and Norwich has never obtained one for ANDA 214369. So, while the amended ANDA

has not been found to infringe, ANDA 214369 cannot be immediately approved without at least a noninfringement finding.

The Court can and should reject Norwich's fallacious argument out of hand. Or, the Court can hold Norwich to its prior concessions and estop Norwich's about-face. This appeal presents a strong case for judicial estoppel. *See Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729, 733 (D.C. Cir. 2019). Norwich may have failed in its quest to reverse Judge Andrews' order, but Norwich nonetheless succeeded in persuading Judge Andrews and the Federal Circuit that the order broadly blocks FDA from approving ANDA 214369 after a carveout amendment. That's the position the Court should not let Norwich now contradict.[7] Allowing Norwich to do so now, after unequivocally representing the opposite throughout the infringement proceedings, would create the public perception that Norwich has misled either this Court or those courts.

---

7  "A party need not finally prevail on the merits" for judicial estoppel to apply; "judicial acceptance means only that the first court has adopted the position urged by the party." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982); *see also Temple Univ. Hosp.*, 929 F.3d at 735.

C. Norwich is distorting the FDCA, FDA's regulations, and the infringement proceedings to deprive Salix of its patent rights.

Norwich likes to trumpet the Hatch-Waxman Act's purpose of helping drug manufacturers get FDA approval of generics before relevant patents expire. *See* AOB 54–55. But Norwich ignores that the Act's other purpose, protecting patentholders' rights, is at least as important. *See Eli Lilly & Co.*, 496 U.S. at 676–78. The Act protects patentholders by authorizing them to bring preapproval infringement litigation against ANDA applicants who make Paragraph IV certification and, what's more, by staying FDA's approval a Paragraph IV ANDA for thirty months while litigation advances. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

Norwich initially made Paragraph IV certifications for more than two dozen of Salix's patents. As was its right, Salix sued Norwich for infringing them all, but Salix could not litigate them all. Salix was instructed to winnow the number of patents for trial and ultimately selected eight. Those were difficult choices, which Salix made based on many considerations, especially the four corners of Norwich's proposed product, trial strategy (like the amount of trial time Salix expected a patent would need), and Norwich's assurance that it would not amend its ANDA to carve out either indication. Norwich's assurance, reflected in the parties'

joint stipulation, was central to Salix's decision: If Norwich had carved out the HE indication before trial, Salix's selection of patents for trial would necessarily have changed, for, at a minimum, Salix would not have spent any trial time on its HE patents.

Norwich's position in this case—that FDA must immediately approve the amended ANDA because it (supposedly) doesn't infringe Salix's HE patents—is an end-run around the FDCA, Salix's patent rights, and the bargain Norwich struck. Whether an ANDA for an IBS-D-only generic version of Xifaxan 550 infringes any of Salix's patents is unknown. Owing to Norwich's strategic decisions in the infringement litigation, none of those issues was tried. And Salix has the right to try them. Yet, if Norwich got its way and FDA immediately approved the amended ANDA 214369 without a judicial resolution of those issues, Salix's patent rights would be gutted.

Though Norwich frequently cites it, *Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012), does not support Norwich's stratagem. That case involved a *pretrial* carveout amendment: the ANDA was filed with a Paragraph IV certification in 2005; it was amended with a section viii statement in 2008; and bench trial occurred in 2010. *See id.* at 409–410. Nothing in *Caraco* endorses Norwich's *post-*

*judgment* carveout amendment and its flawed theories relating to timing of ANDA approval.

Norwich's inability to get immediate approval of its amended ANDA protects Salix's patent rights *while* leaving Norwich with recourse. For, as Salix has always acknowledged, Norwich could file a new ANDA for an IBS-D-only generic version of Xifaxan 550. Judge Andrews' prior judgment "appropriately said nothing that would prevent approval of a *new* non-infringing ANDA." *Salix*, 98 F.4th at 1068 (emphasis added).

Norwich retorts that the only difference between its amended ANDA 214369 and a hypothetical new ANDA would be their different identification numbers. *See* AOB 55. Not so. A new ANDA would be a new act of infringement, which "would start the approval process over again" (AOB 56) and, importantly, prompt new infringement litigation. The filing fee is not what's stopping Norwich from filing a new ANDA. *See* AOB 55. No, Norwich wants to avoid litigation that would test its assertion that an IBS-D-only ANDA will not infringe Salix's patents.

## II.   In no event could the Court order FDA to approve ANDA 214369 immediately.

Norwich concludes (AOB 57) by asking this Court to direct the district court to grant Norwich's preliminary injunction motion, in which

Norwich sought not only vacatur of FDA's tentative approval but also an order directing FDA to immediately approve ANDA 214369. JA__[[Dkt. 4-1 at 1]]. That relief would be unlawful.

FDA could have other bases for withholding full approval. The agency identified Judge Andrews' judgment, but neither the FDCA nor the APA requires the agency to list every reason an ANDA cannot be immediately approved. One reason suffices.

In fact, we now know FDA has another reason for issuing tentative approval: While litigation over ANDA 214369 was pending, Norwich amended ANDA 214370, which originally sought approval of only a generic version of Xifaxan 200, to seek approval of a generic version of Xifaxan 550—same as in the amended ANDA 214369. On January 10, 2025, FDA tentatively approved the amended ANDA 214370 because an earlier ANDA applicant (Actavis) "is eligible for 180-day exclusivity that precludes FDA from granting final approval to [Norwich's] Rifaximin Tablets, 550 mg, at this time." *Norwich v. FDA (Norwich APA II)*, No. 1:25-cv-00091 (D.D.C. 2025), Dkt. 17, Ex. 9 [Jan. 10, 2025 Tentative Approval Letter]; *see* 21 U.S.C. § 355(j)(5)(B)(iv)(I) (providing for 180 days of exclusivity). Norwich's challenge to FDA's tentative approval of ANDA 214370 is separately on appeal, in Case No. 25-5137.

Logical consistency requires FDA, after withholding full approval of ANDA 214370 based on Actavis's 180-day exclusivity, to withhold full approval of ANDA 214369 based on the same exclusivity. The ANDAs are substantively identical in relevant respects. Norwich's tacked-on request for this Court to order FDA to immediately approve ANDA 214369 is an improper effort to thwart FDA from applying its exclusivity determination consistently.

# CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

/s/ Bryan Killian

Bryan Killian
Douglas Hastings
Brendan Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

September 10, 2025

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,935 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 365 in Century 14-point font, a proportionally spaced typeface.

/s/ Bryan Killian