**ORAL ARGUMENT NOT YET SCHEDULED**
No. 23-5311

# United States Court of Appeals
# for the District of Columbia Circuit

NORWICH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant*,

v.

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES; MARTIN MAKARY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF FOOD AND DRUGS; UNITED STATES FOOD AND DRUG ADMINISTRATION,

*Defendants-Appellees*,

SALIX PHARMACEUTICALS, INC.,

*Intervenor for Defendants-Appellees.*

On Appeal from the United States District Court for the District of Columbia,
No. 23-cv-1611 (Hon. Randolph D. Moss)

## REPLY BRIEF OF APPELLANT
## NORWICH PHARMACEUTICALS, INC.

Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
mmurphy@axinn.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
(737) 910-7314
nicholas.schlossman@lw.com

October 1, 2025

Andrew D. Prins
Rachael L. Westmoreland
Lia Rose Barrett
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.prins@lw.com
rachael.westmoreland@lw.com
lia.barrett@lw.com

*Counsel for Plaintiff-Appellant*
*Norwich Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

<b>Page</b>

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY..................................................................................... v

INTRODUCTION .............................................................................1

ARGUMENT .....................................................................................5

   I.     THE DELAWARE JUDGMENT DELAYING APPROVAL
         OF THE THEN-OPERATIVE '369 ANDA DOES NOT
         DELAY APPROVAL OF THE AMENDED '369 ANDA .................5

        A.    The Text and Structure of the FDCA Make Clear that a
             § 271(e)(4) Order, Read in Context, Does Not Delay
             Approval of an Amended ANDA with Distinct Patent
             Certifications................................................................5

        B.    FDA's Binding Regulations Also Make Clear that a
             § 271(e)(4) Order Does Not Delay Approval of an
             Amended ANDA with Distinct Patent Certifications..............11

        C.    The Delaware Court's Judgment Did Not Purport to
             Delay Approval of an Amended ANDA That The
             Delaware Court Never Considered or Ruled Upon .................12

            1.    The Delaware Court's Judgment Did Not Purport
                  to Delay Approval of an Amended ANDA ....................13

            2.    The Post-Judgment Rule 60 Order Reaffirms the
                  Meaning of the Judgment ................................................18

   II.    THE STATUTE'S PURPOSE AND HISTORY FAVOR
         NORWICH ..........................................................................21

CONCLUSION ..................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avadel CNS Pharmacueticals, LLC v. Becerra*,
  638 F. Supp. 3d 23 (D.D.C. 2022)........................................................23

*In re Barr Laboratories, Inc.*,
  930 F.2d 72 (D.C. Cir. 1991)......................................................21, 27

*Caraco Pharmacuetical Laboratories, Ltd. v. Novo Nordisk A/S*,
  566 U.S. 399 (2012)...................................................1, 6, 9, 22, 25

*Eli Lilly & Co. v. Medtronic, Inc.*,
  496 U.S. 661 (1990)........................................................16

*Ferring B.V. v. Watson Laboratories, Inc.*,
  764 F.3d 1382 (Fed. Cir. 2014) ...........................................13, 16, 19

*Ferring B.V. v. Watson Laboratories, Inc.*,
  764 F.3d 1401 (Fed. Cir. 2014) ..........................................8

*Gentiva Health Services, Inc. v. Becerra*,
  31 F.4th 766 (D.C. Cir. 2022)..........................................9

*GlaxoSmithKline LLC v. Teva Pharmacueticals USA, Inc.*,
  7 F.4th 1320 (Fed. Cir. 2021) ..........................................24

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017)........................................................9

*Konstantinidis v. Chen*,
  626 F.2d 933 (D.C. Cir. 1980)..........................................18

*Mylan Pharmacueticals Inc. v. Henney*,
  94 F. Supp. 2d 36 (D.D.C. 2000), *vacated and remanded sub nom.*,
  *Pharmachemie B.V. v. Barr Laboratories, Inc.*, 284 F.3d 125
  (D.C. Cir. 2002) ..........................................10

ii

**Page(s)**

*National Environmental Development Association's Clean Air Project*
*v. Environmental Protection Agency*,
752 F.3d 999 (D.C. Cir. 2014) ............................................................11

*Salix Pharmacueticals, Ltd. v. Norwich Pharmacueticals Inc.*,
98 F.4th 1056 (Fed. Cir. 2024) ...................................................*passim*

*Vanda Pharmacueticals Inc. v. West-Ward Pharmacueticals*
*International Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018) .........................................................16

## STATUTES AND REGULATIONS

5 U.S.C. § 706(2)(A) .........................................................................23

21 U.S.C. § 271(e)(1) .........................................................................16

21 U.S.C. § 271(e)(2)(A) ....................................................................16

21 U.S.C. § 355(b)(2)(A) ..........................................................10, 22, 23

21 U.S.C. § 355(j)(2)(A)(viii) .............................................................1

21 U.S.C. § 355(j)(2)(B)(ii)(II) ..........................................................22

21 U.S.C. § 355(j)(5)(B) ..........................................................2, 3, 6, 7, 9

21 U.S.C. § 355(j)(5)(B)(iii) ..........................................................2, 22

21 U.S.C. § 355(j)(5)(B)(iii)(I) ...........................................................6

21 U.S.C. § 355(j)(5)(B)(iii)(II) ..........................................................6

21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa) ......................................................7

21 U.S.C. § 355(j)(5)(B)(iii)(I)(bb) ......................................................7

21 U.S.C. § 355(j)(5)(C)(ii)(I) ...........................................................10

21 U.S.C. § 355(j)(5)(D)(i)(III) ...........................................................9

35 U.S.C. § 271(a) .............................................................................24

**Page(s)**

35 U.S.C. § 271(b) ...................................................................................24

35 U.S.C. § 271(e)(2)...............................................................................16

35 U.S.C. § 271(e)(4)...............................................................................15

21 C.F.R. § 314.94(a)(8)(iv) ......................................................................1

21 C.F.R. § 314.94(a)(12)(viii) ................................................................10

21 C.F.R. § 314.94(a)(12)(viii)(A) ...............................................1, 12, 22

21 C.F.R. § 314.94(a)(12)(viii)(B)...........................................................10

21 C.F.R. § 314.107(b)(1)(ii)....................................................................12

## OTHER AUTHORITIES

81 Fed. Reg. 69,580 (Oct. 6, 2016)....................................................11, 12

## GLOSSARY

**Abbreviation/acronym  Description**

'369 ANDA              Norwich's ANDA No. 214,369

'370 ANDA              Norwich's ANDA No. 214,370

ANDA                   Abbreviated New Drug Application

FDA                    Food and Drug Administration

FDCA                   Federal Food, Drug, and Cosmetic Act

HE                     Hepatic Encephalopathy

IBS-D                  Irritable Bowel Syndrome with Diarrhea

Norwich                Norwich Pharmaceuticals, Inc.

Salix                  Salix Pharmaceuticals, Inc.

# INTRODUCTION

FDA's Response Brief is most notable for what it does not say. FDA does not dispute that Norwich amended its '369 ANDA to remove all references in its label to prevention of Hepatic Encephalopathy ("HE"), and all certifications to Salix's HE patents—the certifications that gave rise to infringement and the Delaware judgment delaying approval of the original '369 ANDA. FDA does not dispute that the FDCA and FDA's regulations allow an applicant to obtain immediate approval of such a "skinny label" that "'carves out'" from its patent certifications "the still-patented methods of use" after a court's finding of infringement. *See Caraco Pharm. Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 406 (2012) (citing 21 C.F.R. § 314.94(a)(8)(iv)); *see also* 21 U.S.C. § 355(j)(2)(A)(viii); 21 C.F.R. § 314.94(a)(12)(viii)(A). And FDA does not dispute that, under the statute and FDA's rules as consistently construed by FDA, once Norwich removed the HE patent certifications from its ANDA, there was no patent-based obstacle to the amended ANDA's immediate approval.

FDA's argument is far narrower. According to FDA, regardless of what its statute and rules say or what it believes a patent judgment should provide in a normal case, the Delaware court's judgment delayed approval of "the '369 ANDA" until the expiry of the HE Indication patents in 2029, and the amended ANDA at issue here is still "the '369 ANDA." FDA argues, in effect, that "its hands are tied."

1

The fact that not even FDA seems to truly believe its denial of final approval is consistent with the governing statute and regulations should be a red flag that something has gone awry. It has. FDA's core conceptual error is that it believes this case solely involves interpreting the words "the '369 ANDA" in the judgment, divorced not only from the Delaware court's accompanying *order* disclaiming that the court ruled upon any amended ANDA, but also from the statute that explains how that private party judgment is at all relevant to FDA. The FDCA provides that an ANDA's approval date shall be determined by applying four timing rules and assigning a date to "each certification made" by the applicant in an "application submitted" under § 355(j). 21 U.S.C. § 355(j)(5)(B). With respect to Paragraph IV certifications in particular, the assigned approval date depends on the outcome of any patent litigation arising from the certification to that *specific* patent. *Id.* § 355(j)(5)(B)(iii). Norwich's '369 ANDA, as amended after the Delaware court's judgment, does not contain any "certification made" to Salix's HE patents. The statute forecloses FDA from reading a judgment addressing infringement by the original ANDA's HE patent certifications as precluding approval of the amended ANDA lacking those same infringing certifications. *Id.*

Tellingly, Salix does not pursue FDA's theory that the statute is irrelevant to the application of the Delaware judgment: Salix agrees with Norwich that the statute determines how the Delaware judgment applies to "each certification made" in the

2

amended ANDA. Salix instead argues that because Norwich *historically* "made" certifications to the HE patents, the FDCA applies the Delaware judgment to those historical HE certifications to delay approval of the amended ANDA, *even after Norwich withdrew those certifications*. Salix's construction is wrong: The past participle "made" refers to certifications "made" in the pending ANDA under FDA consideration, which determine its approval date. *Id.* § 355(j)(5)(B).

FDA and Salix's interpretation of the Delaware judgment is also facially wrong. The Delaware court expressly limited its judgment to the then-operative, original '369 ANDA containing the HE Indication and HE patent certifications. JA__ (AR44). In response to a potential amendment, the court also noted that whether "Norwich may seek to carve out the HE indication as permitted by 21 U.S.C. § 355(j)(2)(A)(viii) is immaterial to this analysis. That label is not before me." *Id.* The court did not purport to delay approval of a hypothetical, future amended ANDA that it expressly refused to consider or rule upon, and explained was "permitted."

FDA and Salix barely address the Delaware order's text, instead arguing that *Norwich* previously understood the Delaware judgment to be broader than Norwich argues today. But that is irrelevant: The Federal Circuit definitively rejected Norwich's position. That court explained that a § 271(e)(4)(A) resetting order delays approval only of "particular infringing uses of the drug," in that case, "this infringing ANDA" containing the HE patent certifications, rather than delaying

approval of the entire "drug" rifaximin. *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056, 1068 (Fed. Cir. 2024). So, to the extent Norwich argued "that the district court order unfairly precludes it from receiving final approval of a new non-infringing ANDA," the "district court did no such thing." *Id.* That final judgment is what matters, not Norwich's earlier (and, as it turned out, mistaken) views.

Turning to the statute's history and purpose, FDA does not dispute Norwich's arguments that the approach FDA took in this case conflicts with the purpose and history of the Hatch-Waxman amendments in promoting the timely entry of generic drugs. Indeed, there is nothing suggesting Congress's intent to require an applicant to submit a new ANDA, and start over FDA's scientific review process from scratch, after it amends and withdraws infringing patent certifications. Indeed, FDA's regulations expressly allow that procedure as authorized under the Act.

The upshot is that FDA wants to treat this case as an anomaly—that the Delaware judgment delayed approval of the "the '369 ANDA," and so, even if FDA *normally* allows approval of carved-out amended ANDAs after an infringement judgment, it cannot do so in this case. Salix, on the other hand, recognizes what is really at stake here: Under Salix's interpretation, the statute *universally* bars *all* post-judgment "carved out" amended ANDAs (*i.e.*, those withdrawing the patent

certifications held to be infringing), if that ANDA applicant previously "made" a certification that was held infringing in the judgment.

FDA fails to recognize that this case is *not* an anomaly, and that Salix's and FDA's positions here put at risk a cornerstone of FDA's generic drug approval regime. As the Federal Circuit explained, an order delaying approval of the then-operative ANDA, here, "the '369 ANDA," is the *only relief* available in a pre-approval § 271(e)(4) "resetting order" delaying a drug's approval. *Salix*, 98 F.4th at 1068-69. If Salix and FDA were correct that an order delaying the operative ANDA actually bars approval of any *amended*, carved out ANDA *bearing the same number*, that would mean that FDA's regulations authorizing immediate approval of amended, carved-out ANDAs after a finding of infringement would be in serious jeopardy. Congress did not intend to delay generic drugs' approval in this way.

The Court should reverse the judgment below, with instructions to grant Norwich summary judgment.

## ARGUMENT

## I. THE DELAWARE JUDGMENT DELAYING APPROVAL OF THE THEN-OPERATIVE '369 ANDA DOES NOT DELAY APPROVAL OF THE AMENDED '369 ANDA

### A. The Text and Structure of the FDCA Make Clear that a § 271(e)(4) Order, Read in Context, Does Not Delay Approval of an Amended ANDA with Distinct Patent Certifications

As Norwich previously explained, § 355(j)(5)(B) provides that the "approval

of an *application submitted* ... shall be made effective on the last applicable date determined by applying the following to *each certification made* under paragraph (2)(A)(vii)." 21 U.S.C. § 355(j)(5)(B) (emphases added).  With respect to Paragraph IV certifications in particular, the statute assigns a specific date to "each certification made" by the ANDA applicant in its "application submitted," depending on the outcome of patent litigation concerning that *specific patent*, and selects the last applicable date among those dates as the permissible approval date.  *Id.* § 355(j)(5)(B)(iii)(I)-(II) (assigning date based on finding "the patent" is infringed).

The Supreme Court has interpreted the statute such that the certifications made in the "application submitted" refers to the operative ANDA—here, the amended ANDA.  In *Caraco*, the Supreme Court confirmed that the generic company had used the "section viii ... mechanism" to allow its product to "quickly come to market," notwithstanding a patent certification in its superseded ANDA. 566 U.S. at 415; *see id.* at 409-10 (explaining relevant background).  So the FDCA provides that the approval date for Norwich's amended ANDA should have been determined by applying the timing rules to "each certification made" in the amended ANDA, the "application submitted" by Norwich for FDA's final consideration.

FDA does not dispute that when FDA made its tentative approval decision, Norwich had, as permitted by FDA regulations, removed all certifications to the HE patents and added section viii statements that the amended ANDA did *not* seek

6

approval for any use claimed in the HE patents. JA\_\_-\_\_ (AR367-69 & n.2). When FDA ran the four timing rules on Norwich's amended ANDA, it should have assigned a permissible approval date associated with "each certification made under paragraph (2)(A)(vii)" in the amended ANDA, *i.e.*, the "application submitted." 21 U.S.C. § 355(j)(5)(B). Had FDA done so, it would have found that (1) each remaining Paragraph IV certification (*e.g.*, with respect to the IBS-D patents) resulted in an effective date no later than August 10, 2022, when the Delaware court entered judgment finding the associated patents not infringed; and (2) Norwich's section viii statements as to the HE patents were not "certification[s] made under paragraph (2)(A)(vii)" considered under the four statutory timing rules. *See id.* § 355(j)(5)(B)(iii)(I)(aa)-(bb); JA\_\_-\_\_ (AR55-58). Thus, the "last applicable date" under the relevant timing rules was August 10, 2022. *See* 21 U.S.C. § 355(j)(5)(B).

FDA does not dispute any of that. Instead, FDA and Salix each offer two, conflicting accounts of how to avoid Congress's command to assign a date to "each certification made" by Norwich in its amended ANDA, *excluding* the HE patents. FDA's and Salix's conflicting theories demonstrate why neither is correct.

For FDA's part, FDA does not dispute that Norwich withdrew its Paragraph IV certifications to the HE patents, and that, ordinarily, such a post-infringement carved-out ANDA would be entitled to immediate approval under 21 U.S.C. § 355(j)(5)(B). Instead, FDA argues (at 42) that, *in this case*, FDA must

apply the text of the Delaware judgment *alone*, without regard to the statute's timing rules, and that judgment precludes approval of "the '369 ANDA."

FDA cannot ignore its enabling statute in this way.  A § 271(e)(4) "resetting order" is not, as FDA suggests, essentially an injunction that directly binds FDA—a nonparty to the Delaware litigation—in equity.  Instead, a § 271(e)(4) "resetting order" gains its force and effect only when applied by FDA under the approval timing rules in § 355(j)(5)(B) of the FDCA.  *See Ferring B.V. v. Watson Laboratories, Inc.*, 764 F.3d 1401, 1406 (Fed. Cir. 2014).  FDA does not dispute that, if the Delaware court's judgment were applied *as provided by § 355(j)(5)(B)* by setting the approval date associated with "each certification made" by Norwich, its amended ANDA is immediately approvable, because no certification has been "made" to the HE patents.  That should be dispositive of this case.

Salix, unlike FDA, correctly acknowledges (at 11-13, 18, 39-43) the "centrality" of § 355(j)(5)(B) to determine the effect of a § 271(e)(4) resetting order, and that such an order is given effect by assigning a date to "each certification made" by the ANDA applicant.  But, Salix argues (at 41) that in applying the Delaware judgment to "each certification made" by Norwich, FDA must consider Paragraph IV certifications to the HE patents that Norwich had *previously* "made" but has since withdrawn and no longer maintains in its amended ANDA.  Specifically, Salix argues (at 41) that the word "made" is a "past-tense verb," and so it refers to any

*historical* certification that was "made" but subsequently withdrawn. So, on Salix's view, the Delaware judgment finding the original ANDA infringed the HE patent certifications delays approval of the amended ANDA deleting those certifications.

Salix is simply confused. "Made" is not a "past-tense verb" in this provision. Instead, the verb "make" is transformed into the adjective "made" as a past participle that describes the present state of affairs, *i.e.*, an applicant's current certifications. "[P]ast participles like 'owed,'" and, in this case, certifications "made," "are routinely used as adjectives to describe the present state of a thing." *Gentiva Health Servs., Inc. v. Becerra*, 31 F.4th 766, 776 (D.C. Cir. 2022); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 84 (2017). "Each certification made," then, refers to the certifications currently made in the current, operative ANDA. 21 U.S.C. § 355(j)(5)(B).

The broader statutory context reinforces this interpretation. Congress enacted the Hatch-Waxman Act to facilitate rapid approval of generic drugs to treat patients "as soon as patents allow." *Caraco*, 566 U.S. at 405. And the patent certifications "made" in the then-pending application are *how* FDA makes that determination. *See id.* at 405-08. To facilitate this process, Congress provided that applicants are entitled to amend or withdraw patent certifications, with specific statutory consequences following for the approvability of the then-operative ANDA as a consequence of making these changes. *See, e.g.*, 21 U.S.C. § 355(j)(5)(D)(i)(III) (an

9

applicant may "amend[] or withdraw[] [its] certification[s]").  For example, if patent information is withdrawn from the Orange Book, applicants must withdraw Paragraph IV certifications to that patent.  *See id.* § 355(b)(2)(A); 21 C.F.R. § 314.94(a)(12)(viii)(B).  Salix's interpretation would mean, for example, that after a court order requiring a patent-holder to remove its patent from the Orange Book as improperly listed, *see* 28 U.S.C. § 355(j)(5)(C)(ii)(I), that patent would *still* delay approval based on a Paragraph IV certification historically "made" to that patent.  That makes no sense.

Salix also argues (at 43-46) that, under FDA's regulations, withdrawing a patent certification means the "ANDA will no longer be *considered* to contain the prior certification," but the ANDA *still actually* contains the withdrawn certification.  Salix Br. 15 (quoting 21 C.F.R. § 314.94(a)(12)(viii)).  Neither the statute nor regulation says anything remotely like that.  When FDA tried to push a similar "interpretation" decades ago, it was laughed out of court.  *See Mylan Pharms. Inc. v. Henney*, 94 F. Supp. 2d 36, 57 & n.14 (D.D.C. 2000).  And the record shows that FDA does not believe Norwich's amended ANDA contains certifications to the HE patents, either.  *See* JA__-__ (AR367-69 & n.2) (explaining ANDA "contains statements" but not certifications to HE patents); JA__ (AR57).[1]

---

[1]     Salix also argues (at 44) that under 21 C.F.R. § 314.107(b)(1)(ii), an applicant may maintain certifications and statements to the same patent.  But that provision

Salix's theory is also incompatible with decades of FDA practice: The result would be that, after a finding of infringement as to *any* use of a drug for any use in a Paragraph IV certification, post-judgment carve-out amendments are *never* approvable, because the Paragraph IV certification was *historically* "made." FDA has maintained the opposite position for decades. *Supra* at 7, 10; *infra* at 21. The statute plainly supports, rather than undermines, FDA's longstanding approach.

## B. FDA's Binding Regulations Also Make Clear that a § 271(e)(4) Order Does Not Delay Approval of an Amended ANDA with Distinct Patent Certifications

FDA's application of the Delaware judgment must also be informed by FDA's regulations. *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (It is "axiomatic" that an "agency is bound by its own regulations.").

Under those regulations, there was only one lawful way to apply the Delaware court's judgment. FDA does not dispute that ANDA applicants are expressly permitted under FDA's regulations to amend their ANDAs after a judgment of infringement to delete indications and withdraw certifications, and then obtain immediate approval: Following a finding of infringement, an applicant may "provide a [patent] statement ... if the applicant amends its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent."

---

allows for maintaining both certifications and statements to a given patent where they address, for example, *different claims* within the same patent. *See* 81 Fed. Reg. 69,580, 69,624 (Oct. 6, 2016). That is irrelevant to the issue here.

21 C.F.R. § 314.94(a)(12)(viii)(A).  FDA does not dispute that, in situations like this one where, after a finding of infringement, the applicant "submit[s] an appropriate [section viii statement] explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval," the amended ANDA should become approvable "[i]mmediately." *Id.* § 314.107(b)(1)(ii); *see also* 81 Fed. Reg. at 69,624 (same).

FDA's sole response (at 42) is that "nothing in the regulations purports to instruct FDA to ignore a final judgment of a district court."  Norwich is not asking FDA to ignore the Delaware court's order, but to apply it by its terms.  The Delaware court had discretion whether or not to consider the amended ANDA after judgment. *Infra* at 18-19.  FDA, on the other hand, had no such discretion.  Under its regulations, FDA was required to treat the amended ANDA as no longer containing the infringing HE certifications to which the Delaware court's resetting order applied, then grant immediate approval to the amended ANDA. *Supra* at 10.

## C.     The Delaware Court's Judgment Did Not Purport to Delay Approval of an Amended ANDA That The Delaware Court Never Considered or Ruled Upon

The plain text of the Delaware court's judgment and accompanying order facially does not bar approval of Norwich's amended ANDA.

Tellingly, both FDA and Salix focus myopically on two things:  That (1) the Delaware court's judgment delayed the approval of "ANDA No. 214369" until the

expiry of the HE patents, and (2) Norwich historically feared that FDA would apply that judgment as barring approval of any amended ANDA.  But FDA and Salix fail to meaningfully engage with the actual language in the Delaware court's order defining the "scope" of its judgment, which declined to adopt the broader reading that FDA and Salix now press here.  That FDA and Salix rely almost exclusively on Norwich's former arguments regarding the Delaware judgment—*prior to the Federal Circuit definitively rejecting those arguments*—rather than engage the text of the court's orders, is another red flag that their interpretation is wrong.

> ### 1.     The Delaware Court's Judgment Did Not Purport to Delay Approval of an Amended ANDA

The Delaware court's order accompanying its judgment made clear that its judgment delayed approval of the then-operative "ANDA No. 214369," but did not delay the approval of any future, amended version of the ANDA not presented to or ruled upon by the court.  The Delaware court stated:  "the effective date of the approval of *this infringing ANDA* must not be earlier than the expiration of the latest asserted HE claim."  JA__ (AR44) (emphasis added).  "[T]his infringing ANDA" can have only one meaning, *id.*, and that is "the operative ANDA," because a judgment of infringement is "a judgment finding that the operative ANDA infringes."  *Ferring B.V. v. Watson Laboratories, Inc.*, 764 F.3d 1382, 1391 (Fed. Cir. 2014).  The operative ANDA was the one containing the HE patent certifications that existed at the time of the judgment.  JA__ (AR44).

The Delaware court confirmed this with certainty, stating:

> The scope of my ruling is that the HE patents are not invalid, and that *the HE indication would infringe the HE patents*. Norwich's *proposed ANDA has the HE indication*. *I cannot rule on facts that are not before me* [regarding a revised ANDA and label]. That Norwich may seek to *carve out the HE indication as permitted by 21 U.S.C. § 355(j)(2)(A)(viii)* is immaterial to this analysis. *That label is not before me*.

JA__ (AR44) (emphases added). Taking this piece by piece: Because "Norwich's proposed ANDA has the HE indication," the court found that the approval date of "this infringing ANDA must not be earlier than the expiration of the latest asserted HE claim." *Id.* So the delay to "this infringing ANDA" necessarily means the then-operative ANDA that "has the HE indication." *Id.* Next, the court explained that Norwich was permitted, in the future, to "seek to carve out the HE indication," *i.e.*, to remove the HE Indication from any hypothetical, amended ANDA's label, as "permitted" by the statute. *Id.* The court refused to rule on the approval date of any amended ANDA allowed by the FDCA, because "[t]hat label is not before me." *Id.*

Neither FDA nor Salix wrestle with this language, nor offer any alternative reading. They do not explain how the court could have ruled on the approval date of a hypothetical amended ANDA it refused to consider. That should be dispositive.

Instead, FDA and Salix focus on Norwich's historical arguments that the Delaware court's order had a broader delaying effect. The Federal Circuit definitively rejected those arguments: "[T]he district court order *concerned only the*

*specific ANDA in question that included an infringing use*, referred to the ANDA by its number, and enjoined the approval of *that ANDA*." *Salix*, 98 F.4th at 1068 (emphases added). Only the ANDA that "included an infringing use," *i.e.*, the HE indication and resultant certifications to the HE patents, was delayed. *Id.* So to the extent Norwich historically had argued, for example, that the Delaware "order unfairly precludes it from receiving final approval of a new non-infringing ANDA," in fact, "the district court did no such thing." *Id.*

The Federal Circuit explained that a § 271(e)(4) order sets an approval date "not earlier than the date of the expiration of the patent which has been infringed" as to the "approval of the *drug ... involved in the infringement.*" *Id.* at 1067-68 (emphases added) (quoting 35 U.S.C. § 271(e)(4)). The Federal Circuit explained why that language did not apply to all of a given applicant's ANDAs for a given "drug," including amendments to an ANDA: "FDA does not approve drugs in the abstract, but rather approves drugs for particular uses (indications) of that drug, the statute is appropriately construed as directed to *[delaying] approval of particular infringing uses of the drug*, not all uses of the drug including non-infringing uses." *Id.* at 1068 (emphasis added). FDA and Salix simply ignore this text.

The upshot is that the Delaware judgment "appropriately delayed the effective final approval date of 'this *infringing ANDA'* submission" only. *Id.* (emphasis added). But when the Delaware court entered judgment, there had been no

"submission" of any amended ANDA.[2]  The "infringing ANDA submission" that was delayed was Norwich's ANDA containing the HE patent certifications.  *See id.*

Indeed, submission of an ANDA containing certifications to the HE patents is the very "artificial" act of infringement *necessary* to render a pre-approval ANDA infringing, and enables a patent suit to be brought prior to the generic's approval or marketing.  *See Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1125-28 (Fed. Cir. 2018).  With the amended ANDA lacking certifications to the HE patents, there literally *cannot be* infringement of Salix's HE patents by *that* amended ANDA *prior to its approval*.  *See* 21 U.S.C. § 271(e)(2)(A) (defining "act of infringement" to include ANDA seeking approval "for a drug claimed in a patent or the use of which is claimed in a patent," *i.e.*, identified in the Orange Book listing and ANDA's certification(s)); *id.* § 271(e)(1) (exempting from infringement claim the use of drug "related to the development and submission of" an ANDA); *see also Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990) (describing submission of Paragraph IV certification as "artificial act of infringement").  It is implausible that the Delaware court was pre-opining on the approvability of a hypothetical

---

[2]    When the statute refers to "'submi[ssion]'" of an "'application'" "'for a drug ... the use of which is claimed in a patent,'" "the statute refers not to the initial filing but to the *filing as amended*."  *Ferring*, 764 F.3d at 1390-91 (emphasis added) (quoting 35 U.S.C. § 271(e)(2)); *id.* at 1388, 1390-91 (explaining that a § 271(e)(4) order is limited to the "operative" application that serves as the "'act of infringement'" and describes "[w]hat is likely to be sold").

amended ANDA *lacking* the certifications it held to be infringing, *i.e.*, certifications *necessary* to render any amended ANDA infringing prior to its approval/marketing.

And to the extent Salix invokes "estoppel" based on Norwich's former arguments in the Delaware case (at 56), any estoppel would run against Salix. Salix does not dispute that it urged the Delaware court to adopt a judgment limited solely to Norwich's pre-amendment '369 ANDA, which the court then adopted, relying on Salix's representations that such an order would not impact approval of an amended ANDA. Joint Letter 1, *Salix v. Norwich*, No. 1:20-cv-430 (D. Del. Aug. 15, 2022), Dkt. 196 at 1 ("*'369 Infringement Case*"). Salix told the court that its judgment should delay approval of the "current ANDA" based on its current labeling "that contains HE and IBS-D indications." *Id.* Rather than the judgment barring approval of an amended ANDA, Salix stated that, following an amendment, further litigation would be needed to determine whether an amended, carved-out ANDA infringed Salix's patents and/or was approvable. *Id.* at 1-2 (arguing that if Norwich "were to amend its ANDA to purportedly carve out the HE indication," Salix would need "further discovery on whether Norwich would still induce infringement of the Asserted HE Patents" through its amended ANDA). Salix argued that pre-determining the approval date of a hypothetical amended ANDA, without further litigation including "discovery," would be an improper "advisory judgment," given the Parties "never litigated" the content of an amended "skinny" label. *Id.*

17

The Delaware court considered and relied upon Salix's arguments in its order adopting the scope of judgment that Salix requested, governing only the then-operative ANDA. JA __-__ (AR43-45). Yet Salix now urges this Court to construe the Delaware court's order as just such an "advisory judgment" delaying the approval date of a hypothetical, future amended ANDA that Salix told the Delaware court it *should not* rule upon and required further "discovery" if it were later filed with FDA. *Id.* If estoppel were to have any force here, it is on this issue that Salix *successfully* persuaded the Delaware court: "[S]uccess in the prior proceeding is clearly an essential element of judicial estoppel." *Konstantinidis v. Chen*, 626 F.2d 933, 938-39 (D.C. Cir. 1980) ("[A] party should not be allowed to convince … one judicial body to *adopt* … contentions" and then reverse itself.).

## 2.    The Post-Judgment Rule 60 Order Reaffirms the Meaning of the Judgment

FDA and Salix also argue that post-judgment developments mean the judgment should be read broadly to apply to the amended '369 ANDA. The Delaware court's decision not to consider the amended ANDA after the judgment or modify its judgment reinforces Norwich's position in this case.

After judgment, Norwich sought express assurances from the court in a post-judgment posture that the amended ANDA now on file "would not be inducing infringement" of Salix's patents. JA__ (AR359). While the Patent Act "require[s] consideration of [an] amended ANDA" if amended "during the pendency of the

18

litigation," consideration of whether an amended ANDA is infringing is discretionary if the amendment is post-judgment. *Ferring*, 764 F.3d at 1390 & n.7. There can be no dispute that the Delaware court exercised its discretion not to consider the post-judgment amendment here. *'369 Infringement Case*, Dkt. 222 at 4. The court declined to reconsider its judgment to determine whether Norwich had "successfully carved out language from a label to turn infringement into non-infringement." *Id.* The court's refusal to determine whether Norwich successfully carved out the infringing patents from its amended ANDA *is not a determination that Norwich had failed to do so*. Yet FDA treated the judgment as if it had so-determined. That was error.

The amended ANDA lacking the HE Indication and the HE patent certifications was simply a "new issue after judgment" that would require essentially "a second litigation." JA__ (AR361). It makes no sense to construe the Delaware court's order referring to the need for a "second litigation" on any alleged infringement of the HE patents to actually mean that the court was delaying approval of the amended '369 ANDA *until after those very patents already expired*, foreclosing the possibility of "a second litigation." *Id.*; *see Salix*, 98 F.4th at 1069 (The Delaware court "held that consideration of the amended ANDA would be inequitable and inappropriate," since it would require a "'second litigation.'").

FDA argues (at 24, 27) that the Delaware court criticized Norwich for having "made strategic choices" not to submit a pre-judgment amended ANDA and litigate it in the patent suit, and should be held to those choices. But there, the Delaware court was explaining why it refused to consider or rule upon such an amended ANDA *after* judgment under the high, discretionary standard to modify a judgment under Rule 60; the court was not, as FDA suggests, pre-opining on the approvability of an amended ANDA it refused to consider, much less rule upon. JA__ (AR361).

On the contrary, the Delaware court expressly stated that "there [was] no information about if or when the FDA might approve the amended ANDA." *Id.* If the Delaware court believed it had barred approval of the amended ANDA until at least 2029, it could not have made that statement. FDA tries to hand-wave away the court's observation (at 35-36) as a mere commentary on when an amended ANDA would be *scientifically* approvable by FDA, but not *actually* approvable under the judgment. But that is not what the court actually said: In response to Norwich's concern that "the public *will be harmed* [by the judgment] because [Salix] *will not have any generic competition* ... on the IBS-D treatment method for some period of time," the court commented that such concern was "speculative" because "there is no information about if or when the FDA might approve the amended ANDA." JA__-__ (AR360-61) (emphases added). The Delaware court was therefore

20

reaffirming that it was *not* delaying approval of an amended ANDA that it refused to consider or rule upon.  *Id.*[3]

## II.    THE STATUTE'S PURPOSE AND HISTORY FAVOR NORWICH

As Norwich explained in its opening brief, delaying approval of Norwich's amended carve-out ANDA also contravenes the Hatch-Waxman amendments' purpose and history.  "Congress sought to get generic drugs into the hands of patients at reasonable prices—fast."  *In re Barr Laboratories, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).  FDA offers no real response as to how requiring an ANDA applicant to start over FDA's scientific review process from scratch with a new ANDA following a finding of infringement, rather than submit an *identical* ANDA as an amended carved-out ANDA, promotes that purpose.  No wonder:  FDA agrees that, as a general matter, a post-judgment carve-out ANDA lacking a certification to the patent(s) held to be infringed is immediately approvable.  *Supra* at 7.

Salix, unlike FDA, argues that the FDCA shows a purpose to require an applicant to start over FDA's review process with a new ANDA.  According to Salix (at 59), "[a] new ANDA would be a new act of infringement, which 'would start the approval process over again'" and "prompt new infringement litigation."  Salix seems to be suggesting that, if Norwich can seek approval of an amended ANDA,

---

[3]    Salix also raises an unclear argument (at 54) that Norwich promised not to amend its '369 ANDA in a stipulation before the Delaware court.  Simply reviewing the stipulation shows Norwich did nothing of the sort.  JA__-__ (AR35-36).

Salix would be deprived of its right to contest whether the amended ANDA infringes its patents.  That is wrong:  ***Norwich is not arguing post-infringement amendments are always entitled to immediate approval or to avoid further patent litigation***.

As Norwich has explained, the Hatch-Waxman Act carefully balances the purposes of rapid generic entry "as soon as patents allow," on the one hand, with protecting patent rights, on the other.  *Caraco*, 566 U.S. at 399.  Among other things, the Act preserves the patent-holder's right to litigate infringement by a post-judgment amended ANDA.  Congress's key safeguard is patent certifications, which must be truthful and accurate at all times, 21 U.S.C. § 355(b)(2)(A), and constitute a deemed act of infringement allowing the patent-holder to sue for infringement prior to the ANDA's approval or marketing, *supra* at 15-17.  So, if a post-infringement amended ANDA contains *new* Paragraph IV certifications—for example, adding a new method of use—the patent-holder may sue again for infringement.  *See* 21 U.S.C. § 355(j)(2)(B)(ii)(II), (5)(B)(iii).  And if a post-infringement ANDA *maintains* the patented use in its label already held infringing, FDA requires the ANDA to maintain Paragraph III certifications attesting to the infringement and barring ANDA approval until the patent expires.  21 C.F.R. § 314.94(a)(12)(viii)(A).

And what if the generic manufacturer claims to have amended the ANDA to include patent statements disclaiming the infringing use, and yet the patent-holder contends the amended ANDA still infringes its patents?  Congress and FDA

22

provided the patent-holder three levels of protections, *including the very patent suit* that Salix claims is necessary to protect its patent rights.

**Level 1:**   The FDCA requires ANDA applicants to submit truthful patent certifications and statements describing whether the ANDA seeks approval of an Orange-Book-listed, patented method of use.  *See* 21 U.S.C. § 355(b)(2)(A)).  And FDA asserts authority to conduct an independent review of patent statements, and *compel* patent certifications even if the ANDA applicant believes they are not required, whenever FDA finds the ANDA's label describes an Orange-Book-listed, patented method of use.  *See, e.g., Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23, 28 (D.D.C. 2022) (FDA applying this asserted authority).  As described, *supra* at 15-17, such certifications offer specific protections for the patent-holder to enforce its rights, including through subsequent patent litigation.

**Level 2:**   If a patent-holder believes an ANDA's label includes its Orange-Book-listed method of use, and yet FDA refuses to compel a certification, the patent-holder can file an Administrative Procedure Act suit, arguing that FDA has acted arbitrarily in failing to require an accurate patent certification.   *See* 5 U.S.C. § 706(2)(A).  Such a certification, if required by the court, would provide the patent holder the same remedies described above, *supra* at 15-17, including a patent suit.

**Level 3:**  If all else failed—if FDA failed to detect that an ANDA should have certified to a patented method-of-use *and* the court declined to correct FDA's error—

23

the patent holder may still seek immediate relief prohibiting the marketing of the drug upon its approval, including but not limited to a temporary restraining order against its sale. *See* 35 U.S.C. § 271(a)-(b) (authorizing such patent suit); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1326-27 (Fed. Cir. 2021) (upholding jury finding of induced infringement based on generic company's marketing of drug for an indication for which it submitted a section viii statement).

This case illustrates these multi-level safeguards working as intended. For all of Salix's puff and bluster that post-judgment amendments are "prone to abuse" (at 6), Salix *never once argues* that Norwich's amended '369 ANDA actually describes a method of use claimed in Salix's HE patents, nor that FDA acted unlawfully in declining to compel Norwich to certify to the HE patents in its amended ANDA. In short, the Level 1 protections alone sufficiently safeguarded Salix's interests.

Salix's arguments disregard Congress's carefully balanced design. Salix wants this Court to, in effect, pre-judge that all amended ANDAs after a finding of infringement, including those like Norwich's that *undisputedly* carve out from their label the patented method-of-use, nonetheless are presumptively infringing and thus unapprovable. On Salix's view, that presumption is irrebuttable: Since Salix theorizes that (i) Paragraph IV certifications cannot be withdrawn once they are made, and (ii) a resetting order like the one here that is addressed to a given "ANDA" with a given number delay approvals of all subsequent *amended* versions of that

24

ANDA with that same tracking number, the upshot of Salix's theory is that carve-out ANDAs after an infringement finding are never approvable, until the infringed patents expire. *Supra* at 8-11. But Congress chose a different balance. *Id.*

As the Delaware court identified, such a "second litigation" brought by Salix would take more labor than just a "summary proceeding" prejudging infringement of an amended ANDA. JA__ (AR361-62). But this Court should not do that work for Salix, depart from the statute, and hold that post-judgment carve-out amended ANDAs are not approvable even where, as here, the certifications show a carve-out of the infringing use has *undisputedly* occurred. That is the balance Congress struck to ensure approval "as soon as patents allow." *Caraco*, 566 U.S. at 405.

Finally, a word is warranted about the real elephant in the room. Salix's overarching theme in its brief that there is no real harm in forcing ANDA applicants to start over FDA's review process from scratch by filing a new ANDA, rather than submit an amended ANDA with section viii statements, after a finding of infringement. But a glancing review of Salix's submissions in the related '370 ANDA matter before this same panel shows that Salix is misleading the Court. There, Norwich *did* carve-out the HE Indication in a different ANDA, the '370 ANDA, exactly as Salix suggests doing to expedite approval. But there, Salix raises a host of alleged defects unique to the '370 ANDA *precisely because it is a different ANDA* from the amended '369 ANDA: That (1) Norwich cannot benefit from *any*

of the findings of non-infringement in the '369 ANDA patent litigation to support approval of the distinct '370 ANDA, No. 25-5137 Salix Br. 8-12; (2) filing the '370 ANDA should also give rise to another 30-month stay of approval of the '370 ANDA *not* applicable to the '369 ANDA, *id.* at 13-14 & n.3; and (3) the '370 ANDA has a unique history of additional patent certifications, distinct from those in the '369 ANDA, that delays the '370 ANDA's approval, supposedly until 2029, *id.* at 14-15.

While Salix seems embarrassed to point out all of those "benefits" of blocking the '369 ANDA in *this* case, Salix's goal is plain: To squelch this '369 ANDA that, under the statute, undisputedly benefits from the prior judgment of non-infringement as to all relevant uses in the current label, then turn around and proffer new and different arguments that a *substantively identical* '370 ANDA suffers a host of independent defects *precisely because it is a different ANDA from the previously litigated '369 ANDA*, thereby delaying the '370 ANDA for many more years.

And, as Norwich has explained, FDA and Salix's position has broader consequences. An order delaying approval of the then-operative ANDA, here, "the '369 ANDA," is the *only relief* available in a pre-approval § 271(e)(4) "resetting order." *Salix*, 98 F.4th at 1069. If FDA and Salix were correct that such orders actually bar approval of any amended, carved out ANDA bearing the same number, that would mean FDA's regulations *authorizing* immediate approval of such amended ANDAs would be in serious doubt. All of that is far afield from Congress's

26

chosen design to "get generic drugs into the hands of patients—fast." *In re Barr Laboratories*, 930 F.2d at 76.

## CONCLUSION

For the foregoing reasons, the Court should reverse, with instructions to grant Norwich summary judgment.

Dated: October 1, 2025                    Respectfully submitted,

                                          */s/ Andrew D. Prins*

Matthew S. Murphy                          Andrew D. Prins
AXINN, VELTROP & HARKRIDER LLP             Rachael L. Westmoreland
90 State House Square                      Lia Rose Barrett
Hartford, CT 06103                         LATHAM & WATKINS LLP
(860) 275-8100                             555 Eleventh Street, NW
mmurphy@axinn.com                          Suite 1000
                                          Washington, DC 20004
                                          (202) 637-3317
                                          andrew.prins@lw.com
                                          rachael.westmoreland@lw.com
                                          lia.barrett@lw.com

                                          Nicholas L. Schlossman
                                          LATHAM & WATKINS LLP
                                          300 Colorado Street
                                          Suite 2400
                                          Austin, TX 78701
                                          (737) 910-7314
                                          nicholas.schlossman@lw.com

                                          *Counsel for Plaintiff-Appellant Norwich Pharmaceuticals, Inc.*

27

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B), (f), and (g), and D.C. Cir. Rule 32(e), because it contains 6,474 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

 October 1, 2025                              */s/ Andrew J. Prins*             
                                            Andrew J. Prins

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Andrew J. Prins*
Andrew J. Prins